Naomi Spector (SBN 222573)
Email: nspector@kamberlaw.com
**KAMBERLAW, LLP**
1501 San Elijo Road South, Ste.104
San Marcos, CA 92078
Phone: 310.400.1053
Fax: 212.202.6364

Counsel for Plaintiff Lauren Souter, and the
putative Classes

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LAUREN SOUTER, individually, and on behalf of others similarly situated,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS LLC, and EDGEWELL PERSONAL CARE, LLC,**<br><br>**Defendants.** | **CASE NO. 20-CV-1486-TWR-BLM** [CLASS ACTION]<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>Hearing:</u><br>Date:    December 8, 2021<br>Time:    1:30 p.m.<br>Place:   Courtroom 3A<br>Judge:   Hon. Todd W. Robinson<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# TABLE OF CONTENTS

**I.   INTRODUCTION AND FACTUAL BACKGROUND**.................................**1**

  **A.   Pertinent Facts In The First Amended Complaint** ...................**2**

  **B.   Pertinent Legal Developments** ........................................**4**

**II.   REASONABLE CONSUMERS ARE MISLED**.................................**5**

  **A.   Consumers Reasonably Relied on Defendants' False Representations and Were Misled and Deceived**...................................**6**

    **1.   Defendants' Label Representations are False** ...................**6**

    **2.   Plaintiff and Reasonable Consumers are Misled by the Representations** ........................................**8**

  **B.   Defendants' Back Panel Statement Does Not Cure Its Misrepresentations** ........................................**10**

  **C.   Reasonable Consumers Are Misled by the Hypoallergenic Representations**........................................**11**

**III.   PLAINTIFF STATES A BREACH OF EXPRESS WARRANTY CLAIM** **13**

  **A.   Defendants Breached the Warranty that the Products Kill 99.99% of Germs**........................................**14**

  **B.   Defendants Breached the Warranty that the Products are Hypoallergenic** ........................................**14**

**IV.   PLAINTIFF STATES A CLAIM FOR QUASI CONTRACT** ...................**15**

**V.   PLAINTIFF HAS ARTICLE III STANDING** .................................**16**

**VI.   THERE IS NO FEDERAL PREEMPTION** .................................**18**

**VII.   THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY** .......**21**

**VIII.   PLAINTIFF PROPERLY SEEKS EQUITABLE RELIEF**........................**22**

**IX.   CONCLUSION** ........................................**23**

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS          20-CV-01486-TWR-BLM

## TABLE OF AUTHORITIES

**CASES**

*Aleisa v. GOJO Indus., Inc.*,
2021 WL 1893562 (N.D. Ohio May 11, 2021) .......................................................... 17

*Allen v. Similasan Corp.*,
306 F.R.D. 635 (S.D. Cal. 2015) ................................................................................. 14

*Andrade-Heymsfield v. Danone US, Inc.*,
2019 WL 3817948 (S.D. Cal. Aug. 14, 2019), 2020 WL 5513552 (9th Cir. Aug.
13, 2020) ................................................................................................................. 7, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 23

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................................................................................... 15

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ....................................................................................... 16

*Boysen v. Walgreen Co.*,
2012 WL2953069 (N.D. Cal. July 19, 2012) .............................................................. 16

*Brannon v. Barlean's Organic Oils, LLC*,
2019 WL 4393653 (S.D. Cal. Sept. 12, 2019) ............................................................ 23

*Brown v. Hain Celestial Grp., Inc.*,
913 F.Supp.2d 881 (N.D. Cal. 2012)........................................................................... 13

*Bush v. Rust-Oleum Corp.*,
2021 WL 24842 (N.D. Cal. Jan. 4, 2021) ............................................................. 11, 15

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996)........................................................................................... 5

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*,
497 F.3d 972 (9th Cir. 2007)....................................................................................... 23

ii

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ................................................................. 22

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ............................................................. 5, 8

*Escobar v. Just Born*,
   2017 WL 5125740 (C.D. Cal. 2017) ...................................................... 5

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) .................................................................... 5

*Friedman v. AARP, Inc.*,
   855 F.3d 1047 (9th Cir. 2017) ........................................................... 5, 6

*Gisvold v. Merck & Co.*,
   62 F. Supp. 3d 1198 (S.D. Cal. 2014) ................................................. 21

*Ham v. Hain Celestial Grp., Inc.*,
   70 F. Supp. 3d 1188 (N.D. Cal. 2014) ............................................... 7, 8

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
   2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ..................................... 16

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ............................................................ 16

*In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*,
   2017 WL 385042 (C.D. Cal. Jan. 24, 2017) ...................................... 14

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) .............................................. 14

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ............................................................................ 5

*Jou v. Kimberly-Clark Corp.*,
   2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ................................... 13

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (May 22, 2002) ............................................................. 6

iii

*Kellman v. Whole Foods Mkt., Inc.*,
   313 F. Supp. 3d 1031 (N.D. Cal. 2018) ......................................... 12, 13, 15

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ..................................................................... 8, 16, 17

*Lassen v. Nissan N. Am., Inc.*,
   211 F. Supp. 3d 1267 (C.D. Cal. 2016) ...................................................... 17

*Lavie v. Procter & Gamble Co.*,
   105 Cal.App.4th 496 (2003) ........................................................................ 5

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .................................................................... 11

*McGee v. S-L Snacks Nat'l*,
   982 F.3d 700 (9th Cir. 2020) .................................................................... 17

*Mezzadri v. Med. Depot, Inc.*,
   2015 WL 12572619 (S.D. Cal. Feb. 12, 2015) .......................................... 17

*Mier v. CVS Pharmacy, Inc.*,
   2021 WL 1559367 (C.D. Cal. Mar. 22, 2021) ............................ 11, 17, 21, 22

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) .................................................................... 6

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ........................................................................ 8

*Moreno v. Vi-Jon, Inc.*,
   2021 WL 807683 (S.D. Cal. Mar. 3, 2021) ............................................... 17

*Omidi v. Wal-Mart Stores, Inc.*,
   742 F. App'x 260 (9th Cir. 2018) .............................................................. 16

*Peterson v. CJ Am., Inc,*
   2015 WL 11582832 (S.D. Cal. May 18, 2015) .......................................... 14

*Roper v. Big Heart Pet Brands, Inc.*,
   2020 WL 7769819 (E.D. Cal. Dec. 30, 2020) ........................................... 22

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS    20-CV-01486-TWR-BLM

*Sebastian v. Kimberly-Clark Corp.,*
   2017 WL 6497675 (S.D. Cal. Dec. 18, 2017) ................................................. 13, 15, 23

*Sonner v. Premier Nutrition Corp.,*
   971 F.3d 834 (9th Cir. 2020) ....................................................................................... 22

*Spacone v. Sanford, LP,*
   2017 WL 6888497 (C.D. Cal. May 11, 2017) ............................................................... 5

*United States v. Innovative Biodefense, Inc.,*
   2020 WL 5035857 (C.D. Cal. May 4, 2020) ............................................................... 20

*Williams v. Gerber Prod. Co.,*
   552 F.3d 934 (9th Cir. 2008) ............................................................................. 5, 6, 11

*Won Kyung Hwang v. Ohso Clean, Inc.,*
   2013 WL 1632697 (N.D. Cal. Apr. 16, 2013) ............................................................. 19

**STATUTES**

21 U.S.C. § 331(a) ........................................................................................................... 19
21 U.S.C. § 352 ............................................................................................................... 19
21 U.S.C. § 379r .............................................................................................................. 20
21 U.S.C. §§ 331-334 ...................................................................................................... 19

**OTHER AUTHORITIES**

21 C.F.R. § 310 .............................................................................................................. 19
59 Fed. Reg. 31403 (June 17, 1994) ............................................................................. 19

v

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS          20-CV-01486-TWR-BLM

## I.   INTRODUCTION AND FACTUAL BACKGROUND

Defendants' prominent statements on the front label of their Wet Ones hand wipes (the "Products") that the Products "Kill[] 99.99% of Germs" and are "Hypoallergenic" (the "Representations") are false. *See* First Amended Complaint, Dkt. No. 55 ("FAC") ¶ 2. Furthermore, the Representations relate to the precise reasons why consumers purchase the Products—to sanitize hands, including hands of children. *See e.g.* FAC ¶¶ 5-6, 23-26. Defendants are well aware of the power of their Representations and make them, despite their falsity, to drive sales and increase revenue. FAC ¶¶ 114-117. Under Ninth Circuit law, because Plaintiff adequately alleges that the Representations are literally false and that consumers would be deceived by them in purchasing the Products, the reasonable consumer standard is satisfied.

Plaintiff's allegations that Defendants' label Representations are false and misleading also establish claims for breach of express warranty and quasi-contract. The Representations are express, unequivocal and form part of the basis of the bargain on which consumers have purchased the Products. Similarly, Defendants enticed Plaintiff and reasonable consumers to purchase the Products based on the false Representations, and were unjustly enriched.

Defendants' remaining assertions in their Motion to Dismiss Plaintiff's First Amended Complaint, Dkt. NO. 58 ("MTD"), were previously and properly rejected by this Court. As this Court already determined, Plaintiff asserts an economic injury-in-fact sufficient for Article III standing based on her purchase of Products that were not as Defendant represented them to be. *See* Order Granting Defendants' Motion to Dismiss, Dkt. No. 54 ("Order"), at 5-7; *see also* FAC ¶¶ 35-36 (had Plaintiff known that the Representations were false, she would not have purchased the Products, or would have paid less for them). In addition, there is no FDA preemption because Plaintiff's claims require a factual determination of whether the label Representations are false and misleading—issues that are properly within the authority of the Court. *See* Order at 15-17. Likewise, there is no primary jurisdiction because whether the Product labels are

misleading is not an issue that is uniquely within the purview of the FDA. *Id.* at 12-13. There are no new facts pled or material changes to the law that should alter the Court's prior determinations on Article III standing, preemption and primary jurisdiction.

**A. Pertinent Facts In The First Amended Complaint**

Defendants make two principal, prominent false statements on the front label of the Products, which are reinforced by additional false statements on the back label.

First, Defendants expressly state that the Products "Kill[] 99.99% of Germs." This statement is false. The active ingredient in the Products, benzalkonium chloride ("BAC"), is incapable of killing numerous germs, including common germs such as norovirus, HPV and C. difficile. FAC ¶¶ 41-54. Each of these common germs is found on and transmitted by human hands. *See e.g.* FAC ¶ 46 (norovirus is transmitted by hands in food settings); ¶ 48-49 (HPV can be transmitted through contact with someone carrying the virus on their fingers or by touching something that person has touched); ¶ 61 (if a person who has C. diff or caring for someone with C. diff doesn't clean their hands with soap and water, they can spread the germs to everything they touch). Furthermore, the Products are ineffective or less effective at killing coronavirus, the virus responsible for causing COVID-19. *Id.* ¶¶ 55-58.

The manner of application renders the Products additionally ineffective. There is a vast difference between swiping a wipe over human hands—which may be dirty, greasy or grimy—and saturating microbes with BAC under optimal laboratory conditions, which cannot imitate a real world setting. FAC ¶ 77. Accordingly, laboratory findings that hand sanitizers kill 99.99% of germs do not translate to actual use, where the products kill far less than 99.99% of germs. FAC ¶ 6. "In one study conducted among eighth grade students, for example, three popular hand sanitizer brands were found to kill between 46% to 60% of microbes—a far cry from the 99.99% kill rate that is touted by Defendants." FAC ¶ 7. The scientific limitations of BAC to "kill germs" and

2

the manner of application of the Products renders Defendants' "Kills 99.99% of Germs" representation false and materially misleading. [1]

Defendants' second, prominent statement on the front label of the Products, that they are "hypoallergenic", is also false. Seven of the twelve ingredients in the Products, or more than 50% of the entire ingredient profile, are skin allergens. FAC ¶¶ 88-104. This includes BAC, the active and most prominent ingredient in the Products, which is an established skin irritant and was rated as one of the top 10 most frequent skin allergens. FAC ¶¶ 88-89.  The Product ingredients render Defendants' "hypoallergenic" representation false on its face.  FAC ¶ 84 ("Dictionary.com defines hypoallergenic as 'designed to reduce or minimize the possibility of an allergic response, as by containing relatively few or no potentially irritating substances.'").

The falsity of Defendants' "Kills 99.99% of Germs" and "Hypoallergenic" label Representations give rise to Plaintiff's claims. Reasonable consumers, including Plaintiff, rely on product labels for their truth and accuracy. FAC ¶ 121.  Plaintiff and reasonable consumers plausibly and reasonably believed that the express statements on the Product labels were true, and were deceived and injured.  FAC ¶¶ 128-129, ¶ 159; *see e.g.* FAC ¶ 136 ("As per the label, Wet Ones wipes kill 99.99% of germs. I can't

---

[1] Defendants' repeated assertion that Plaintiff's FAC fails to allege any new facts willfully disregards and distorts the allegations in Plaintiff's FAC. *See e.g.* MTD at 4:5-10. The redline of Plaintiff's FAC against her original complaint, Dkt. No. 55-4, plainly demonstrates that Plaintiff included substantial additional information in the FAC, including regarding the falsity of Defendants' Representations and how reasonable consumers are misled and deceived by Defendants' misconduct.  As one example of Defendants' seemingly intentional efforts to misrepresent the FAC, Defendants incompletely and incorrectly quote paragraph 46 of the FAC and state "the only new allegation in the FAC is that 'nororvirus can be found in food settings . . ." (MTD at 5-6, n. 2). This incomplete citation misconstrues the paragraph, which goes on to state: "Wiping hands or surfaces that are contaminated with norovirus with the Products will not kill the virus." FAC ¶ 46.  The complete and accurate citation to the FAC disproves Defendants' false claim and addresses the Court's prior concern that Plaintiff's original complaint failed to address why the "kills 99.99% of germs" representation is relevant to norovirus, a "food-borne illness[]." *See* Order at 10:2-5.

speak specifically to Coronavirus however if they kill 99.99% of germs then I would expect a virus to be included in that."); ¶ 142 ("I use them for everything . . . [including] killing any germ that thinks about coming near her!").

## B. Pertinent Legal Developments

In a similar case involving ethyl-alcohol based hand sanitizing rubs, the Eastern District of Missouri issued an order denying the defendant's motion to strike the plaintiff's nationwide claims and motion to dismiss the first amended complaint. *See* Opinion, Memorandum and Order, *Macormic et al. v. Vi-Jon, LLC*, Case No. 4:20CV1267 HEA (Hon. H. Autrey), August 6, 2021, attached as Exhibit A hereto. In the Missouri action, as here, the plaintiffs allege that the "kills 99.99% of germs" representation on the front label of numerous hand sanitizing products is false and misleading to reasonable consumers. The Missouri court found the plaintiffs adequately alleged that "they suffered damages and an ascertainable loss because the Products they actually received were worth less than the Products as represented." Ex. A at 11; *see id.* at 15 ("In essence, Plaintiffs allege the Products were overpriced compared to their actual value given their inability to kill 99% of germs. In turn, Plaintiffs adequately plead 'what was obtained or given up' as a result of Defendant's alleged misrepresentations.").

The Missouri court also found that the plaintiffs: "adequately alleged that Defendant's representations would likely mislead a reasonable consumer. Plaintiffs allege that the Products claim to kill 99% of germs, leading a reasonable consumer into believing that the respective Products have the ability to kill 'harmful germs,' that they relied on the representations on the labels and have included great detail of how the Products fail the representations of killing 99% of harmful germs. Taken together, Plaintiffs' factual allegations plausibly show that a reasonable customer would believe the Products kill more germs than they actually do." *Id*. at 14. The court further determined that the back label statement failed to ameliorate the deception because "Plaintiffs identify more than just a single word on the Products' packaging to support its allegations, and the impact of the packaging disclosure, as well as other advertisement

4

disclosures, on the overall appearance of the Products is a question of fact best answered at a later stage in this case." *Id*. at 15.

## II.   REASONABLE CONSUMERS ARE MISLED

Whether a business practice is deceptive or misleading "under these California statutes [is] governed by the 'reasonable consumer' test." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). Plaintiff "must show that members of the public are likely to be deceived." *Id*. (quotations omitted). This "requires more than a mere possibility that [Defendants'] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496 (2003). However, "what is relevant at this stage is not what a reasonable consumer *actually* believes, but whether Plaintiff has plausibly pleaded facts indicating what a reasonable consumer *could* believe." *Escobar v. Just Born Inc.,* No. CV1701826BROPJWX, 2017 WL 5125740, at *10, n.5 (C.D. Cal. June 12, 2017); *Spacone v. Sanford, LP,* No. CV1702419BROMRWX, 2017 WL 6888497, at *9, n.10 (C.D. Cal. May 11, 2017); *see also Williams*, 552 F.3d at 940 (concluding that the plaintiffs "could plausibly prove that a reasonable consumer would be deceived" by the snack packaging).

"[T]he California Supreme Court has emphasized that a misrepresentation is judged to be 'material' if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact." *Friedman v. AARP, Inc*., 855 F.3d 1047, 1055 (9th Cir. 2017) (*citing In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)). Also at this stage, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337-38 (9th Cir. 1996) (citation omitted). Furthermore, the consumer protection laws prohibit "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS          20-CV-01486-TWR-BLM

or confuse the public." *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 951, as modified (May 22, 2002) (citations omitted).

Plaintiff has plausibly alleged that reasonable consumers are misled and deceived by Defendants' Representations. First, the prominent Representations appear on the front label of the Products and are literally false. FAC ¶ 131 ("As described herein, Defendants' Representations are literally false."); ¶¶ 25-78 (describing in detail the falsity of Defendants' Efficacy Representation); ¶¶ 83-106 (describing in detail the falsity of Defendants' Skin Safety Representations). Second, the FAC adequately and plausibly alleges that Plaintiff and reasonable consumers are and were misled by the Representations in purchasing the Products. *See e.g.* FAC ¶¶ 110-112, 114-130.

## A. Consumers Reasonably Relied on Defendants' False Representations and Were Misled and Deceived

### 1. *Defendants' Label Representations are False*

The falsity of Defendants' Representations on the front labels of the Products, without reference to any other evidence or allegation, makes it reasonable for consumers to be misled by those statements. The Ninth Circuit in *Moore* makes clear that, although literal truth can sometimes provide protection from a misleading claim, "there is no protection for literal falseness." *Moore v. Mars Petcare US, Inc*., 966 F.3d 1007, 1017-1019 (9th Cir. 2020) (finding that "Plaintiffs have sufficiently alleged a deceptive practice under the reasonable consumer test" where pet food was labeled as "prescription" but had no governmental oversight or medicinal properties); *see also Williams,* 552 F.3d at 939 ("the statement that Fruit Juice Snacks was made with 'fruit juice and other All Natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false."); *Friedman v. AARP*, *Inc*., 855 F.3d 1047, 1055 (9th Cir. 2017) ("actual reliance [for purposes of a UCL claim] ... is inferred from the misrepresentation of a material fact.") (citation omitted); *Ham v. Hain Celestial Grp., Inc*., 70 F. Supp. 3d 1188, 1194 (N.D.

Cal. 2014) ("it is plausible that a reasonable consumer would expect that an 'All Natural' product contains only natural ingredients . . . .").

Accordingly, because Plaintiff adequately alleges that the "Kills 99.99% of Germs" representation is literally false, the FAC demonstrates that reasonable consumers are likely to be misled by that representation. Defendants cannot minimize the import of this misrepresentation by referencing the attributes or limitations of specific germs. [2] Instead, this representation is considered as it is written and is misleading on its face.

Reasonable consumer reliance on the express false label Representations here is entirely distinct from the cases cited by Defendants, which involved consumers that made an *inference* based on a product label, and those inferences were found to be not reasonable. *See e.g. Andrade-Heymsfield v. Danone US, Inc.*, No. 19-CV-589-CAB-WVG, 2019 WL 3817948, at *8 (S.D. Cal. Aug. 14, 2019), appeal dismissed, No. 19-56082, 2020 WL 5513552 (9th Cir. Aug. 13, 2020) ("Plaintiffs' allegations that the Coconut Milk labels are false and misleading are largely dependent on the implied meaning and inclusion of numerous statements from the Coconut Milk labels and Danone's websites that would somehow lead a reasonable consumer to be deceived about the nutritional benefits of consuming the Coconut Milk."); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (a reasonable consumer "would

---

[2] Defendants' Motion—by attempting to inject doubt regarding whether particular "germs" are prevalent or dangerous—fails to see the forest for the trees. MTD at 5-7. The essential germ allegation in the FAC is that the "Kills 99.99% of Germs" statement on the front label of the Products is false and misleading. The specific germs described in the FAC are included as examples of the falsity of that statement. FAC ¶¶ 36-37. Moreover, contrary to Defendants' claims, many of the germs are in fact common and are predominantly or commonly transmitted by human hands. *See e.g.* FAC ¶¶ 45-72. Defendants appear to base their assertions that certain diseases or pathogens are obscure or do not appear on hands almost entirely on the chart included at paragraph 41 of the FAC. *See* MTD at 6:10-15. Plaintiff included this chart to show how BAC works and that it cannot "permeate or disturb the cell membrane and process" of certain diseases, not to demonstrate the prevalence of specific germs. FAC ¶¶ 41-42.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS          20-CV-01486-TWR-BLM

not be deceived into believing that cereal named 'Crunch Berries' derived significant nutritional value from fruit.") (citations omitted); *see also Ebner v. Fresh, Inc.,* 838 F.3d 958, 965-66 (9th Cir. 2016) ("It is undisputed that the Sugar label discloses the correct weight of included lip product."). Furthermore, unlike the facts in *Andrade-Heymsfield*, here there is no FDA monograph that governs the Representations. *See* Section VI below; FAC ¶¶ 79-81; *cf. Andrade-Heymsfield*, 2019 WL 3817948, at *6 (the plaintiff claimed the products violated FDA regulations for health and nutrient content claims).[3]

### 2. *Plaintiff and Reasonable Consumers are Misled by the Representations*

Label representations "are precisely the sort of consideration reasonable people can and do attach importance to in their purchasing decisions." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 333 (2011). Defendants' label Representations address specific attributes of the Products that make them desirable to consumers—the quantification of germs killed, and the hypoallergenic or gentle nature of the Products. FAC ¶¶ 1-2, 22-25. Even Defendants have acknowledged the materiality of the "Kills 99.99% of Germs Representation." FAC ¶¶ 114-115 ("According to a 'senior brand manager of skin care for Playtex Products Inc, [former] maker of Wet Ones antibacterial wipes' "[t]he 99.99% message is more powerful among consumers than 'antibacterial' or 'germ kill' alone . . . ."). Furthermore, as alleged,  Defendants intentionally make the false Representations

---

[3] Although not cited in Defendants' MTD, this case is readily distinguishable from *Moore v. Trader Joe's Co*., 4 F.4th 874, 876 (9th Cir. 2021). There, the plaintiffs argued that the label statement that Trader Joe's Manuka honey contained "100% New Zealand Manuka Honey" was misleading because it was only between 57.3-62.6% derived from Manuka flower nectar. *Moore* is distinguishable because the 100% claim on the Trader Joes honey was accurate under the FDA's Honey Guidelines, which expressly govern labeling statements on honey. *Id*. at 881. By contrast, here, there is no FDA requirement that expressly governs the Representations. FAC ¶¶ 79-81. In addition, the *Moore* court distinguished between consumers who purchase products like Manuka Honey, a "niche, specialty product" who "are undoubtedly more likely to exhibit a higher standard of care" and consumers of " 'low-priced, everyday items,' including 'low-cost groceries' " who are "likely to exhibit a low degree of care when purchasing" and are " 'not likely to study with great diligence the contents of a complicated product package.' " *Id*. at 884 (citations omitted). The Products at issue here undoubtedly fall into the latter category.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS          20-CV-01486-TWR-BLM

to increase sales. FAC ¶ 115 ("On information and belief, Defendants intentionally included the prominent 'Kills 99.99% of germs' statement on the front label of the Products to increase sales."); ¶ 116 ("manufacturers are able to charge a price premium for Products labeled as natural or hypoallergenic."). Thus, although materiality is a question of fact that will be proven at a later stage, at the pleading stage Plaintiff has adequately demonstrated the importance of the Representations such that reasonable consumers could and would be deceived by them.

Plaintiff's allegations that the Representations are false are also sufficient at the pleading stage to demonstrate that reasonable consumers are likely to be misled. For the avoidance of doubt, Plaintiff also included information in the FAC demonstrating that she and reasonable consumers are and were misled and deceived by the Representations. FAC ¶ 121 ("Reasonable consumes rely on Product labels for their truth and accuracy."); ¶¶ 123-124 (it is the responsibility of manufacturers to accurately label their products; it is not the consumer's responsibility to determine when labels are false or misleading); ¶¶ 133-151 (describing consumer reviews of the Products, which demonstrate that reasonable consumers are misled by the Representations, including based on the belief that they kill 99.99% of germs). At a later stage of this case, Plaintiff will prove that reasonable consumers were in fact misled. At this stage, Plaintiff has sufficiently and plausibly demonstrated that reasonable consumers could be misled and deceived by Defendants' express misrepresentations. [4]

---

[4] Defendants' claim that it is implausible that reasonable consumers would believe that the wipes should be used on surfaces (MTD at 6) will likely be proven or disproven through the discovery process. In the FAC, Plaintiff simply included certain publicly available consumer statements about the Products showing reasonable consumers are misled by the kills 99.99% of germs representation, some of which happen to mention use of the Products on surfaces. Whether consumers use the Products on surfaces is not essential to a determination that reasonable consumers are misled.

**B. Defendants' Back Panel Statement Does Not Cure Its Misrepresentations**

Defendants' assertion that the back label statement alleviates consumer deception is contrary to the facts pled and the law of this circuit. MTD at 7. Defendants incompletely cite the back panel statement, taking it out of context and imputing meaning into the statement that it does not have.  MTD at 7:6-8.  The entire statement on the back panel, as correctly set forth in Plaintiff's complaint, reads:

> Wet Ones® Antibacterial Hand Wipes kill 99.99% of germs and wipe away dirt, providing a better clean than hand sanitizers. They are specially formulated to be tough on dirt and germs, yet gentle on skin, so you can confidently keep your hands fresh and clean when soap and water are not available."  FAC ¶ 25 (the "Back Panel Statement").

Defendants' reliance on just the final clause of this Statement—so you can confidently keep your hands fresh and clean when soap and water are not available— misconstrues its import. The Back Panel Statement is not an instruction to consumers to only use the Products when soap and water is not available. *See* MTD at 7. The Statement is not a Directions or Use instruction, both of which appear separately on the back label and neither of which make any mention of soap and water. Instead, the Back Panel Statement is a false and misleading promotion of the Products, including based on the false statements that the Products wipe away germs and are better than hand sanitizers. Defendants cannot parse this statement and attempt to attribute meaning to it that it simply does not have. Reading the Back Panel Statement as a whole, and as alleged, the Statement is additionally false and misleading.  FAC ¶¶ 29-32, 38-72 (the Back Panel Statement is false and misleading because the Products do not kill 99.99% of germs); FAC ¶¶ 82-204 (the Back Panel Statement is false and misleading because the Products are not gentle on skin).

Even if the Back Panel Statement is truthful (which it is not), under Ninth Circuit law the false front panel Representations cannot be cured by the Back Panel Statement:

> We disagree ... that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.... We do

10

not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.

*Williams*, 552 F.3d at 939-40.  *Bush v. Rust-Oleum Corp.*, No. 20-CV-03268-LB, 2021 WL 24842, at *5 (N.D. Cal. Jan. 4, 2021) ("Rust-Oleum also contends that the products are not deceptive because they disclose what 'earth friendly' means in a back-label disclosure that the products 'contain[ ] no inorganic phosphates, hazardous solvent, or environmentally harmful surfactants.' The court cannot conclude as a matter of law that the disclosure is 'clear and prominent qualifying language' that qualifies the front-label claims and prevents deception about the asserted environmental benefit.").

Furthermore, the meaning attributed to the Back Panel Statement is a question of fact that is inappropriate for determination at this stage. *See e.g. Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Mier v. CVS Pharmacy, Inc.*, No. SACV2001979DOCADS, 2021 WL 1559367, at *5 (C.D. Cal. Mar. 22, 2021) ("Whether this qualification on the back label clears up a consumer's potential confusion that the Product kills 99.99% of germs is a question of fact not appropriate for the pleadings stage. If anything, as the Plaintiff suggests, the mention of the Product's speed and efficiency on the back label may be read as an additional claim, having the effect of reassuring a consumer of the Product's efficacy.").  Accepting Plaintiff's allegations as true, it is plain that the Back Label Statement is additionally false and misleading.

**C. Reasonable Consumers Are Misled by the Hypoallergenic Representations**

The dictionary.com meaning of "hypoallergenic" is: "designed to reduce or minimize the possibility of an allergic response, as by containing relatively few or no potentially irritating substances." FAC ¶ 84.  Reasonable consumers are misled and deceived by Defendants' prominent use of the term "Hypoallergenic" on the front label of the Products because the Products contain numerous ingredients that are skin irritants and allergens. FAC ¶¶ 85-104. On the back label of the Products, Defendants also include the phrases "Pediatrician Tested" and "gentle on skin", which bolster the

11

misleading "hypoallergenic" claim (collectively, the "Hypoallergenic Representations") and further mislead consumers concerning the true nature of the Products. FAC ¶ 83.

Contrary to Defendants' false claim that the FAC focuses on the "adverse health effects" (MTD at 10-11) of the Product ingredients, each of the ingredients discussed in the FAC is described as a skin irritant.[5] *See* FAC ¶ 88 (BAC, the active ingredient in the Products, is an established skin irritant); ¶¶ 89-91 (citing several studies finding that BAC is associated with dermatitis, a skin irritation); ¶ 98 (phenoxyethanol presents a category 2 danger for skin irritation); ¶ 99 (caprylyl glycol is a skin irritant); ¶ 101 (dihydroxypropyl peg-5 linoleammonium chloride causes skin irritation); ¶ 102 (potassium Sorbate causes skin irritation); ¶ 103 (disodium EDTA has been found to disrupt the surface of skin cells); and ¶ 104 (fragrance is a common allergen that can cause allergic contact dermatitis). Furthermore, Plaintiff does not allege that a reasonable consumer would interpret the Products as posing no risk of skin irritation, instead she alleges that "Plaintiff and reasonable consumers would not expect that the Products would contain numerous additional known skin irritants." FAC ¶ 105. These facts are sufficient to demonstrate that reasonable consumers are misled, including by purchasing or paying a price premium for the Products. FAC ¶ 106.

*Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031 (N.D. Cal. 2018), is instructive. In that case, the plaintiff argued that if a skin sensitizer makes up more than 0.1% of a product, or if a product contains a sensitizer that may elicit an allergic response at concentrations smaller than 0.1%, the entire product is a skin sensitizer and is therefore not hypoallergenic. In finding that the plaintiff stated a claim that reasonable consumers are misled by the use of the term "hypoallergenic" on the products labels the court stated:

> [T]he defendants argue that "reasonable customers would not interpret these statements as a promise that the products contain no skin sensitizers or will never cause an allergic response." This mischaracterizes the

---

[5] For the sake of completeness, certain of the ingredients are also described as toxins or having negative health effects, however, this does not negate the fact that the ingredients are also skin irritants.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS         20-CV-01486-TWR-BLM

plaintiffs' claims. The plaintiffs are not alleging that a product must contain no skin sensitizers or never cause an allergic response to be hypoallergenic. They are alleging that the defendants' products contain a sufficiently high concentration of skin sensitizers that they may cause sensitization reactions in a substantial number of people. The defendants appear to object to the plaintiffs' definition of "hypoallergenic" and argue that under other interpretations of "hypoallergenic" (e.g., "products that manufacturers claim produce fewer allergic reactions than other products"), their statements are not false. But how a reasonable customer would interpret "hypoallergenic" is not a question that can be resolved (at least on this record) on a motion to dismiss.

*Id.* at 1050-51. *See also Sebastian v. Kimberly-Clark Corp.,* No. 17CV442-WQH-JMA, 2017 WL 6497675, at *5 (S.D. Cal. Dec. 18, 2017) (finding the plaintiff alleged sufficient facts to support an inference that reasonable consumer would be deceived by the labels of Huggies Natural Care Baby Wipes products, which contained the words natural, gentle and hypoallergenic but contained synthetic and potentially harmful ingredients); *Bush*, 2021 WL 24842, at *5 (finding that whether the use of the term "non-toxic" on cleaning products was misleading to reasonable consumers could not be resolved on a motion to dismiss); *Jou v. Kimberly-Clark Corp*., No. C-13-03075 JSC, 2013 WL 6491158, at *10 (N.D. Cal. Dec. 10, 2013) ("by labeling these wipes as 'Natural Care,' and superimposing that term on an image of a green leaf, it is plausible that a reasonable consumer would likely be led to believe that the wipes contained only natural ingredients."). Accordingly, because the majority of the ingredients in the Products are known skin allergens of irritants, Defendants' Hypoallergenic Representations are false and misleading to reasonable consumers.

## III.   PLAINTIFF STATES A BREACH OF EXPRESS WARRANTY CLAIM

To prevail on a breach of express warranty claim, Plaintiff must prove: (1) Defendants' Representations "constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Brown v. Hain Celestial Grp., Inc*., 913 F.Supp.2d 881, 899-900 (N.D. Cal. 2012) (citation omitted). "Proof of reliance on specific promises is

not required." *Id.* (citation omitted).  Because Defendants' Representations occur on the Product labels and are express false statements, Plaintiff has adequately alleged that Defendants breached two express warranties, that the Products: (1) "kill[] 99.99% of Germs" and; (2) are "Hypoallergenic."

## A. Defendants Breached the Warranty that the Products Kill 99.99% of Germs

Defendants breached the express warranty that the Products kill 99.99% of germs. This statement is express, appears exactly as stated on the front label of the Products and Plaintiff alleges it is false and that it formed part of the benefit of the bargain in her purchase of the Products.  FAC ¶¶ 2-4, 23-25, 110-112, 232-234; *see also Peterson v. CJ Am., Inc,* No. 14CV2570 DMS (JLB), 2015 WL 11582832, at *7 (S.D. Cal. May 18, 2015) ("The statements describing the Annie Chun's products as 'NO MSG ADDED' are sufficiently "specific and unequivocal" to state a claim for breach of express warranty."); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118 (S.D. Cal. 2011) (finding the plaintiff stated a claim for breach of express warranty where the challenged statements appeared on Nutella's advertising and packaging); *Allen v. Similasan Corp.*, 306 F.R.D. 635, 649 (S.D. Cal. 2015) (finding predominance was met for breach of express warranty claim because: "[i]f those labels are express warranties, such warranties are the basis of the bargain because consumers have no other reason to purchase the Products . . . . if Plaintiffs' theory that the Products are ineffective is true, then Defendant breached the warranty."); *see also In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*, No. 13-2438 PSG (PLAX), 2017 WL 385042, at *10 (C.D. Cal. Jan. 24, 2017) (denying motion for summary judgment as to breach of express warranty claims and finding that reliance is not required under California law).

## B. Defendants Breached the Warranty that the Products are Hypoallergenic

Defendants' Hypoallergenic Representations constitute an express warranty, which was breached.  The statements appear on the Product labels and constitute an affirmation of fact or promise.  FAC ¶¶ 232-233.  The statements formed part of the benefit of the bargain between Plaintiff and Defendants.  FAC ¶¶ 105-106; 111-112.

14

Defendants breached the warranty because the Products contain numerous skin irritants and are not in fact hypoallergenic or gentle on skin.  FAC ¶¶ 88-105.

Plaintiffs' allegations sufficiently allege a breach of express warranty claim.  *See Sebastian*, 2017 WL 6497675, at *5-8 (holding that the "Plaintiffs' allegations regarding Defendant's use of the terms 'natural,' 'gentle,' and 'hypoallergenic' are sufficient to demonstrate that Defendants made 'affirmations of fact or promises or provided a description of its goods'" and that the plaintiff asserted a claim for breach of express warranty); *Kellman*, 313 F.Supp.3d 1031, 1052 (the plaintiff "plausibly alleges that the defendants' labeling of their products as 'hypoallergenic' constituted an affirmation of fact or promise or a description of the goods as being hypoallergenic, that the statement was part of the basis of the bargain, and that the defendants breached their warranty because their products were in fact not hypoallergenic."); *Bush*, 2021 WL 24842, at *6 (the plaintiff stated a claim for breach of express warranty: "First, the product labels promised 'non-toxic' and 'earth friendly.' Second, the plaintiff plausibly pleaded that the promise was a basis for the purchase and the products were in fact not 'non-toxic' or 'earth friendly.'").

## IV.   PLAINTIFF STATES A CLAIM FOR QUASI CONTRACT

Under Ninth Circuit law, Plaintiff alleges a claim for quasi-contract where "the defendants [ ] enticed the plaintiffs into purchasing one of the defendant's products through false and misleading labeling, which resulted in the defendant being unjustly enriched." *See Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015). Plaintiff's quasi-contract claim here exactly satisfies this standard because Defendants enticed Plaintiff to purchase the Products based on their false and misleading label Representations.  *See id.* ("Astiana alleged in her First Amended Complaint that she was entitled to relief under a 'quasi-contract' cause of action because Hain had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that Hain was 'unjustly enriched' as a result. This straightforward statement is sufficient to state a quasi-contract cause of action."); *Sebastian*, 2017 WL 6497675, at *10 (the

15

plaintiffs' claims that the defendant's labels were misleading stated a claim for quasi-contract under California law).

## V.    PLAINTIFF HAS ARTICLE III STANDING

Under California law, a plaintiff suffers an economic injury in fact for purposes of Article III standing if she "would not have bought [a] product but for [some] misrepresentation." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011); *Omidi v. Wal-Mart Stores, Inc.,* 742 F. App'x 260, 262 (9th Cir. 2018)).

As this Court previously determined, Plaintiff has Article III standing. *See* Order at 5-7 ("Plaintiff has both constitutional and statutory standing.  Plaintiff alleges an economic harm, or in other words, the loss of money. Plaintiff claims that she would not have bought the hand wipes or would have bought them on different terms if she had known the truth about their efficacy . . . . Second, Plaintiff alleges reliance.").  Plaintiff's FAC should not alter the Court's prior determination because, consistent with her prior complaint, Plaintiff pleads economic harm and reliance.  *See* FAC ¶¶ 10-13; 109-112.

Without any explanation or attempt to tie its baseless assertion to Plaintiff's actual pleading, Defendants appear to assert that Plaintiff makes an allegation of future injury. MTD at 13.[6]  This is simply not true.  Plaintiff asserts that she suffered an economic

---

[6] For the reasons stated in Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's original Complaint, Dkt. No. 36 ("Opposition to MTD"), the cases cited by Defendants are inapposite because they are premised on an inapplicable, hypothetical risk of harm in product defect/liabilty cases. *See e.g., Birdsong v. Apple, Inc.*, 590 F.3d 955, 956 (9th Cir. 2009) (the plaintiffs pled only a potential risk of hearing loss associated with unsafe use of iPods by other users and not themselves); *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *3 (N.D. Cal. Sept. 1, 2010) (plaintiffs "only allege that 1,4–dioxane and formaldehyde may be carcinogenic for humans, that there could be no safe levels for exposure to carcinogens and that Defendants' products contain some amount of these substances."); *Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 WL2953069, at *5 (N.D. Cal. July 19, 2012) (involving the absence of disclosure of levels of lead and arsenic in fruit juices and finding that the plaintiff had not pled that the products were unfit for their intended use where the FDA had found that the levels at issue were safe);

16

1    injury by purchasing Defendants' Products, which were not as Defendants represented

2    them to be.  FAC ¶¶ 109-112.  Plaintiff's allegations constitute a classic injury-in-fact

3    sufficient for Article III standing. *See* Order at 4-7; *Mezzadri v. Med. Depot, Inc.*, No.

4    14CV2330 AJB (DHB), 2015 WL 12572619, at *3 (S.D. Cal. Feb. 12, 2015) ("the focus

5    of the FAC is on the misrepresentations made by Defendant[s] and Plaintiff's resulting

6    purchase based on those alleged misrepresentations.  As such, the injury alleged is in the

7    purchase of the goods rather than the injury incurred through product defect."); *Kwikset*

8    *Corp.*, 51 Cal. 4th at 334 ("in the eyes of the law, a buyer forced to pay more than he or

9    she would have is harmed at the moment of purchase, and further inquiry into such

10   subsequent transactions, actual or hypothesized, ordinarily is unnecessary.") (citation

11   omitted).[7] *See also Mier v. CVS Pharmacy, Inc.*, No. SACV2001979DOCADS, 2021

12   WL 1559367, at *3 (C.D. Cal. Mar. 22, 2021) (finding the plaintiff had Article III

13   standing where he alleged that he would not have bought the  hand sanitizer if he had

14   known that it does not kill 99.99% of germs).[8]

15

16   *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1283 (C.D. Cal. 2016) ("Plaintiffs
     have pled only a conjectural and hypothetical injury: their vehicles have the capability

17   of causing carbon monoxide poisoning, but this risk depends entirely on Plaintiffs'
     parking their vehicles in an enclosed space and walking away from their vehicles without

18   turning them off.").  Similarly, *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir.

19   2020), is inapplicable because the Ninth Circuit found no loss of the benefit of the
     bargain where the plaintiff did not plead that the defendant made any representations

20   about the safety of the popcorn at issue and truthfully made label disclosures that it
     contained artificial trans far.  The Ninth Circuit recognized, however, that the plaintiff

21   could allege a loss, as Plaintiff does here, if there was "some allegation that [defendant]

22   made false representations." *Id.*

23
     [7] The *Moreno v. Vi-Jon, Inc.* decision (S.D. Cal. Case. No. 20CV1446), cited by

24   Defendants, granted the defendant's motion to dismiss with leave to amend.  An
     amended complaint was filed in that matter on March 24, 2021 and a motion to dismiss

25   was filed, which was taken under submission by the Court but has not been decided.

26
     [8] The decision from the Northern District of Ohio in *Aleisa v. GOJO Indus., Inc.*, No.

27   5:20-CV-2383, 2021 WL 1893562, at *1 (N.D. Ohio May 11, 2021) is distinct because

28   it applies Sixth Circuit authority on standing that is different from Ninth Circuit law on
     standing.  Moreover, contrary to Defendants' assertion, the *Aleisa* decision is not

                                              17

The remainder of Defendant's arguments are baseless. Contrary to Defendants' false claim, and as described above, Plaintiff never assumes that the Products are intended to be used on surfaces—Plaintiff merely included consumer reviews in her FAC that discussed in part use of the Products on surfaces. MTD at 15:9-11. Moreover, Plaintiff does not allege that she expected the Products to kill any "obscure diseases and viruses" or any particular disease. MTD at 15:11-17. As plainly set forth in the FAC, Plaintiff relied on Defendants' label Representations in purchasing the Products and suffered injury in fact based on the difference between what was represented by Defendants—Products that kill 99.99% of germs and are hypoallergenic—and what was received. FAC ¶ 159. These claims establish standing.

## VI.   THERE IS NO FEDERAL PREEMPTION

To the extent Defendants are permitted to "expressly adopt and incorporate[] its preemption and primary jurisdiction argument" from their original motion (MTD n. 7), Plaintiff likewise respectfully requests that her arguments in opposition be incorporated here. *See* Plaintiff's Opposition to MTD, Dkt. No. 36, at 8:10-14:2. These issues were already thoroughly briefed and properly determined. *See e.g.* Order at 13-17 ("Here, Plaintiff's claims only require the court to determine whether Defendants' product labels are false or misleading to a reasonable consumer, and those kinds of claims do not give rise to preemption."). Plaintiff will, however, address a number of Defendants' assertions to correct Defendants' false statements.

First, there is no FDA monograph that regulates the Products:

> FDA has deferred further rulemaking on three active ingredients used in OTC consumer antiseptic rub products to allow for the development and submission to the record of new safety and effectiveness data for these ingredients. The deferred active ingredients are benzalkonium chloride, alcohol (also referred to as ethanol or ethyl alcohol), and isopropyl alcohol. Accordingly, FDA does not make a generally recognized as safe and effective (GRAS/GRAE) determination in this document for these three active ingredients for use in OTC consumer antiseptic rubs. The monograph

preclusive and does not prevent a different plaintiff from bringing claims against GOJO Industries in another circuit or court.  MTD at n. 16.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS          20-CV-01486-TWR-BLM

or non-monograph status of these three ingredients will be addressed, either after completion and analysis of studies to address the safety and effectiveness data gaps of these ingredients or at another time, if these studies are not completed.

*See* 21 C.F.R. § 310 at I.A.  *See also* Order at 17:3-6 ("'The legal status of each tentative final monograph . . . is that of a proposed rule.' Fed. Reg. 31403. Since a TFM is not law, it has no preemptive force.") FAC ¶¶ 79-81 ("The FDA deferred making a monograph or nonmonograph finding for these ingredients . . . Accordingly, the Products do not have monograph status"); *Won Kyung Hwang v. Ohso Clean, Inc.,* No. C-12-06355 JCS, 2013 WL 1632697, at *5 (N.D. Cal. Apr. 16, 2013) (because the TFM only has the legal status of a proposed rule, "the FDA has enacted no regulations governing the labeling of antimicrobial products, according to Plaintiff, and therefore, that the doctrine of field preemption does not apply.").

Defendants' statement that "it would be illegal to sell products that do not conform with the 1994 TFM" misstates the code at issue.  *See* MTD at 16:16-17 (citing 21 U.S.C. §§ 331-334).  The code sections cited by Defendants address the sale of misbranded products and bolster Plaintiff's allegations that Plaintiff and reasonable consumers were injured by purchasing Defendants' misbranded Products.  *See* 21 U.S.C. § 331(a) (Prohibiting "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded."); 21 U.S.C. §§ 332-334 (setting forth the relief and penalties for violations); *see also* 21 U.S.C. § 352 ("A drug or device is misbranded 'if its labeling is false or misleading in any particular.'").   Thus, while the code provides support for Plaintiff's consumer protection claims by prohibiting Defendants' false label statements, it does not create liability for Defendant's advertising statements based on the 1994 TFM.  *See* Order at 15-16 ("Contrary to Defendants' claim, Plaintiff is not asking this Court to impose additional labeling requirements under state law that are 'different from or in addition to' the ones that the FDCA imposes. Rather, Plaintiff is merely saying that Defendants'

19

product labeling, as it currently stands, is *misleading* . . . .This case is about Defendants' advertising and not about whether the products are safe or misbranded, per se.").

Similarly, *Innovative Biodefense*, cited by Defendants, is inapplicable because that case involved certain disease-specific-claims, which are prohibited by the Food, Drug and Cosmetic Act. *See e.g. United States v. Innovative Biodefense, Inc.*, No. SACV180996DOCJDEX, 2020 WL 5035857, at *2 (C.D. Cal. May 4, 2020) (defendants made disease-specific claims despite numerous warnings from the FDA). By contrast, there are no allegations at issue here that Defendants make prohibited disease-specific-claims, instead, Plaintiff claims that Defendants made the Representations to mislead consumers and increase sales. FAC ¶¶ 114-117, 163; *see also* Order at 16:15-18 ("After all, federal law did not require Defendants to represent that their hand wipes kill 99.99 percent of germs or that they are 'hypoallergenic' and 'gentle.' Instead, these were advertising choices that Defendants made, and Plaintiff is simply challenging those choices.") (citations omitted).

Second, there is no claim in Plaintiff's FAC that changes the analysis under Section 379r of the FDCA. MTD at 17. As previously determined by the Court, Section 379r does not preclude Plaintiff's claims: "Contrary to Defendants' claim, Plaintiff is not asking this Court to impose additional labeling requirements under state law that are 'different from or in addition to' the ones that the FDCA imposes. Rather, Plaintiff is merely saying that Defendants' product labeling, as it currently stands, is misleading." Order at 15-16 (citing cases).

Furthermore, and contrary to Defendants' incorrect assertion, Plaintiff does not rely on testing in the FAC that would require or set an incongruent standard from what is required by the FDA. *See* MTD at 17:12-14. Defendants quizzically assert that "Plaintiff uses a 'test conducted among eighth graders' instead of a test conducted . . . [as] required under the 1994 Monograph." MTD. At 17:15-18:2. Plaintiff did not conduct the referenced study, but simply cites it to demonstrate the falsity of Defendants' "Kills 99.99% of Germs" Representation. FAC ¶ 7 ("In one study conducted among

20

eighth grade students, for example, three popular hand sanitizer brands were found to kill between 46% to 60% of microbes—a far cry from the 99.99% kill rate that is touted by Defendants."). Furthermore, *Gisvold v. Merck & Co.*, 62 F. Supp. 3d 1198 (S.D. Cal. 2014), cited by Defendant, is inapposite. MTD at 18 n.10. In *Gisvold*, the plaintiff sought a disclaimer on certain sunscreen labels—which are expressly regulated by the FDA and where the labels complied with the regulations—that "plainly adds to and is not identical with the FDA's requirements." *Id.* at 1202-03 (citing the express, preclusive language set forth in the sunscreen regulation).

There is nothing in Plaintiff's FAC that seeks to impose labeling requirements that are different from any FDA regulation. Instead, as recognized by the Court, Plaintiff simply seeks a determination that Defendant's advertising claims are false and misleading to reasonable consumers. Order at 15; *see also Mier*, 2021 WL 1559367, at *10 ("Plaintiff has asserted a false advertising claim by proffering evidence that shows why the Product's labelling is false or misleading . . . Plaintiff refers to scientific studies that show that hand sanitizers, including the Product, do not kill 99.99% of all germs . . . Therefore, the FDCA does not preempt Plaintiff's analogous state-law claims.").

## VII. THE PRIMARY JURISDICTION DOCTRINE DOES NOT APPLY

As previously determined by this Court, Plaintiff's state law claims "exist[] independently of [the FDCA]" and Plaintiff can bring a claim asserting that the Product labels are misleading. Order at 15:5-13. Whether Defendant's label statements are false and misleading is a determination that is readily within the purview of this Court. Order at 12-13; *Mier*, 2021 WL 1559367, at *12 (finding that the doctrine of primary jurisdiction does not apply because the plaintiff presents a "typical false advertising case" and "allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading."). Accordingly, as previously determined, there is no primary jurisdiction of the FDA.

## VIII. PLAINTIFF PROPERLY SEEKS EQUITABLE RELIEF

Defendant relies on *Sonner* in support of the mistaken notion that Plaintiff cannot seek equitable relief where she also seeks a remedy at law.  MTD at 19:9-17.  *Sonner*, however, is limited in its determination and inapplicable here because it does not apply to claims of false advertising that may result in a future harm.  *Sonner* addresses past harm and states that the plaintiff: "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  *Sonner* does not invalidate *Davidson*, which allows a previously deceived consumer "to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).

Furthermore, post *Sonner*, California Courts have found that plaintiffs may seek equitable relief under the consumer protection laws in addition to a remedy at law where the claims are premised on alleged future harm.  *See Mier*, 2021 WL 1559367, at *13 ("Although *Sonner* only spoke about restitution for past harms, various district courts have since found that the decision applies to equitable claims for injunctive relief based on future harm as well.") (citing cases); *Roper v. Big Heart Pet Brands, Inc.*, No. 119CV00406DADBAM, 2020 WL 7769819, at *8-9 (E.D. Cal. Dec. 30, 2020) ("An actionable cognizable injury exists where a plaintiff alleges that they cannot rely on defendant's labeling when deciding whether to purchase products in the future.").

As in *Mier*, here, Plaintiff seeks relief based on a likelihood of future harm for which there is no adequate remedy at law, therefore Plaintiff has properly sought an injunctive remedy. FAC ¶ 113; *see also Davidson*, 889 F.3d at 969-70 (finding that a previously deceived consumer may have standing to seek an injunction against false labeling where they assert that they will be unable to purchase the product in the future although they would like to or that they may reasonably but incorrectly assume the

22

product was improved); *Sebastian*, 2017 WL 6497675, at *7; *Brannon v. Barlean's Organic Oils, LLC*, No. 318CV01619BTMMDD, 2019 WL 4393653, at *3 (S.D. Cal. Sept. 12, 2019).

## IX.   CONCLUSION

Taking all well pled allegations in the FAC as true and construing the material allegations in the light most favorable to Plaintiff, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint should be denied.  *See e.g. Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.

DATED:  November 10, 2021          **KAMBERLAW, LLP**

By:  /s/ *Naomi B. Spector*
     Naomi B. Spector, Esq.

*Attorneys for Plaintiff and the putative Classes*

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS          20-CV-01486-TWR-BLM

1

## <u>CERTIFICATE OF SERVICE</u>

2     I, Naomi B. Spector, hereby certify that I electronically filed the foregoing

3 Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss

4 First Amended Class Action Complaint with the Court's CM/ECF system.  Notice of

5 this filing will be served to all parties by operation of the Court's electronic filing system.

6

7 DATED:  November 10, 2021           */s/ Naomi B. Spector*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS      20-CV-01486-TWR-BLM