UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN SOUTER, individually, and on behalf of others similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>EDGEWELL PERSONAL CARE COMPANY; EDGEWELL PERSONAL CARE BRANDS, LLC; and EDGEWELL PERSONAL CARE, LLC,<br><br>　　　　　　　　　　　　Defendants. | Case No.:  20-CV-1486 TWR (BLM)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>(ECF No. 58) |

Presently before the Court is Defendants Edgewell Personal Care Company; Edgewell Personal Care Brands, LLC; and Edgewell Personal Care, LLC's Motion to Dismiss Plaintiff's First Amended Complaint ("Mot.," ECF No. 58).  Plaintiff Lauren Souter has filed a Response in Opposition to ("Opp'n," ECF No. 59) and Defendant has filed a Reply in Support of ("Reply," ECF No. 60) the Motion.  The Court heard oral argument on the Motion on December 8, 2021.  (*See generally* ECF No. 61.)  Having carefully considered Plaintiff's First Amended Complaint ("FAC," ECF No. 55), the Parties' arguments, and the law, the Court **GRANTS** Defendants' Motion.

/ / /

## FACTUAL ALLEGATIONS

Plaintiff initiated this putative class action against the Defendants based on allegedly misleading representations associated with their antibacterial hand wipes known as "Wet Ones," which Plaintiff purchased multiple times during the class period. (*See* FAC ¶¶ 2, 17.)   Plaintiff alleges that the misleading representations violate California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and California Consumer Remedies Act ("CLRA").  (*See generally* FAC.)  Plaintiff further alleges breach of express warranty and quasi-contract.  (*See generally id.*)  Two representations are at issue: (1) that the hand wipes kill 99.99 percent of germs (the "Efficacy Representations"), and (2) that the hand wipes are "hypoallergenic" and "gentle" (the "Skin Safety Representations").  (*See id.* ¶¶ 25, 82.)  According to Plaintiff, these representations were false and misleading and would likely deceive reasonable consumers.  (*See id.* ¶¶ 8, 9.)  In buying the hand wipes, Plaintiff alleges that she relied on the Efficacy and Skin Safety Representations on the product label.  (*See id.* ¶ 10.)  If she had known the truth, Plaintiff claims, she would not have purchased the hand wipes or would have purchased them on different terms.  (*See id.* ¶ 12.)

## I.    The Efficacy Representations

With respect to the Efficacy Representations, Plaintiff argues that Defendants' hand wipes do not kill 99.99 percent of germs, as stated on the product label.  (*See* FAC ¶ 27.)  According to Plaintiff, the active ingredient in these hand wipes, benzalkonium chloride ("BAC"), is ineffective against certain viruses, bacteria, and spores, which comprise more than 0.01 percent of germs and can cause serious diseases.  (*See id.* ¶¶ 29, 41.)   Some of those diseases include norovirus, human papillomavirus, picornavirus, crypotosporidium, and clostridium difficile.  (*Id.* ¶¶ 41, 43.)  Plaintiff also claims that the hand wipes are ineffective against COVID-19.  (*See id.* ¶ 55–57.)  Further, Plaintiff alleges that Wet Ones cannot be assumed to prevent the listed viruses, bacteria, and spores because these illnesses are transmissible by hands and/or surfaces.  (*See id*. ¶¶ 46, 48, 52, 58, 68, 71.)

1   Plaintiff does not claim that Wet Ones were purchased with the intention to prevent
2   the illnesses listed in the First Amended Complaint or that Wet Ones failed to protect her
3   from contracting any of the listed illnesses.  (*See id*. ¶ 35–36.)  Instead, Plaintiff claims
4   that if she had known that the Efficacy Representation was false, she would have paid
5   less for Wet Ones or would not have purchased them at all.  (*See id*.)

6   ## II.   The Skin Safety Representations

7   In addition, Plaintiff claims Defendants' product label is false and misleading by
8   stating that the hand wipes are "hypoallergenic" and "specifically formulated to be tough
9   on dirt and germs, yet gentle on the skin."  (*See* FAC ¶ 83.)   Contrary to this
10  representation, Plaintiff contends, the hand wipes allegedly contain ingredients that are
11  "known allergens or skin irritants." (*See id*. ¶ 88–104.)

12  Plaintiff does not claim that she or any member of her family suffered an allergic
13  reaction because of using the hand wipes.  (*See id*. ¶ 86–87.)  Instead, Plaintiff claims that
14  if she had known of the skin irritants and allergens in Wet Ones, she would have paid less
15  for the hand wipes or would not have purchased them at all.  (*See id*.)

16  ## PROCEDURAL BACKGROUND

17  Plaintiff filed her initial Complaint on July 31, 2020.  (*See generally* ECF No. 1.)
18  On October 6, 2020, Defendants moved to dismiss Plaintiffs Complaint on five grounds:
19  (1) lack of constitutional and statutory standing, (2) failure to satisfy the heightened
20  pleading standard under Federal Rule of Civil Procedure 9(b), (3) failure to satisfy the
21  reasonable consumer test, (4) primary jurisdiction, and (5) preemption.  (*See generally*
22  ECF No. 22.)  On June 7, 2021, the Court granted Defendants' motion to dismiss on the
23  ground that Plaintiff failed to satisfy the reasonable consumer test, and granted Plaintiff
24  leave to amend.  (*See generally* ECF No. 54.)

25  Plaintiff filed the operative First Amended Complaint on July 7, 2021.  (*See*
26  *generally* ECF No. 55.)  On August 6, 2021, Defendants filed the instant Motion.  (*See*
27  *generally* ECF No. 58.)

28  / / /

**LEGAL STANDARDS**

## I.  Federal Rule of Civil Procedure 12(b)(1)

A party may challenge the court's subject-matter jurisdiction through a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See* Fed. R. Civ. P. 12(b)(1); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Because "[f]ederal courts are courts of limited jurisdiction," "[i]t is to be presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Consequently, "the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.*

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual."  *White*, 227 F.2d at 1242.  "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'"  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

"A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings."  *Id.* (citing *Safe Air for Everyone*, 373 F.3d at 1039; *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).  "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof[]'" and "prov[e] by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met."  *Id.* (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010); *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012)).  Generally, "if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself."  *Id.* at 1121–22 (citing *Safe Air for Everyone*, 373 F.3d at 1039–40;

*Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983); *Thornhill Publ'g*, 594 F.2d at 733).

"Because standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White*, 227 F.3d at 1242 (citing *Bland v. Fessler*, 88 F.3d 729, 732 n.4 (9th Cir. 1996)).

## II. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Federal "Rule [of Civil Procedure] 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)).  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Id.* (alteration in original) (internal quotation mark omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."  *Id.* (internal quotation marks omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "A district court does not err in denying leave to amend where the amendment would be futile."  *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## ANALYSIS

Defendants move to dismiss on four grounds: (1) lack of constitutional and statutory standing, (2) failure to satisfy the reasonable consumer standard, (3) preemption, and (4) primary jurisdiction.  (*See generally* Mot. at 1; *see also generally* ECF No. 58-1 ("Mem.") at 3–19.)  Defendants also maintain that Plaintiff's claim for equitable relief should be dismissed.  (*See generally* Mot. at 1; *see also generally* Mem. at 19.)  Defendants have not offered new arguments to change the Court's previous ruling

on preemption and primary jurisdiction; consequently, the Court reaffirms its previous ruling denying Defendants' motion to dismiss on those grounds.  The Court addresses Defendants' remaining arguments in turn.

## I.    Constitutional and Statutory Standing

Defendants reassert their claim that Plaintiff lacks constitutional and statutory standing based on Plaintiff's failure to allege a cognizable injury.  (*See* Mem. at 13–16.) The Court is not persuaded by the Defendants' new arguments and finds that Plaintiff has both statutory and constitutional standing.

To have constitutional standing, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  To establish standing to bring a claim under UCL, FAL, and CLRA, those claiming an economic harm—such as Plaintiff—must meet an economic injury-in-fact requirement, which "demands no more than the corresponding requirement under Article III of the U.S. Constitution." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015).  To satisfy the economic injury requirement under the UCL and FAL, Plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (emphasis in original) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011)).  "[A]ny plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, a fortiori, have suffered 'any damage' for purposes of establishing CLRA standing." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013)). Under these statutes, "plaintiffs meet this requirement if they show that, by relying on a misrepresentation on a product label, they paid more for a product than they otherwise

would have paid, or bought it when they otherwise would not have done so." *Reid*, 780 F.3d at 958. "Reliance is alleged where the misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct, such as where the plaintiff in all reasonable probability would not have engaged in [that] conduct in the absence of the fraud." *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 980 (N.D. Cal. 2018) (internal quotation marks omitted).

### A. Economic Injury-In-Fact Requirement

Defendants argue that because Plaintiff suffered no physical injury, Plaintiff has no standing. (*See* Mot. at 14.) Economic injury-in-fact, however, need not be based on a physical injury but can be based on a misrepresentation that led the plaintiff to buy the product. *See Reid*, 780 F.3d at 958.

Plaintiff's allegations suffice. Plaintiff alleges that Wet Ones has skin-irritating ingredients and that a consumer could contract germs that they would expect Wet Ones to eliminate, rendering Wet Ones' Efficacy and Skin Safety Representations false. (*See* FAC ¶¶ 34, 85.) Plaintiff further claims that she would not have bought the hand wipes or would have bought them on different terms if she had known the truth. (*See id.* ¶¶ 36, 87.) Courts repeatedly have found that similar allegations satisfy the requirements to establish economic injury-in-fact. *See Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1218 (C.D. Cal. 2012) ("The harm was not that the product was somehow inferiorly made, but simply that the consumer would not have purchased it at the price he paid, but for the misrepresentations."); *see also Moore*, 966 F.3d at 1020 ("A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL] by alleging . . . that he or she would not have bought the product but for the misrepresentation." (alterations in original) (quoting *Kwikset Corp.*, 51 Cal. 4th at 330)); *Hawkins v. Kroger Co.*, 906 F.3d 763, 769 (9th Cir. 2018) ("Because [the plaintiff] adequately alleged that she relied on the label's misrepresentations and would not have purchased the product without those misrepresentations, she has adequately alleged standing for her labeling claim."). This

Court is bound to follow this well-established precedent and finds that Plaintiff adequately has alleged an economic injury-in-fact.

### B.     Benefit of the Bargain Theory

Second, Defendants apply the "benefit of the bargain" theory, claiming that Plaintiff was not deprived of the benefit for which she *actually bargained*, and thus experienced no economic injury.  (*See* Mot. at 15.)  The Court disagrees.

The "benefit of the bargain" theory is permissible only if the misrepresentation that the consumer alleges was not "material."  *See Hinojos*, 718 F.3d at 1107 (citing *Kwikset Corp.*, 51 Cal. 4th at 332).  A representation is "material" "if a reasonable consumer would attach importance to it *or* if 'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action.'"  *Id*. (emphasis in original) (quoting *Kwikset Corp.*, 51 Cal. 4th at 332–33).  Misrepresentations that are considered material include: meat falsely labeled as kosher or halal, wine labeled with the wrong region or year, blood diamonds mislabeled as conflict-free, and goods falsely suggesting they were produced by union labor.   *Id.* (citing *Kwikset Corp.*, 51 Cal. 4th at 328–29).   The materiality of a misrepresentation is typically an issue of fact and is not decided at the motion to dismiss stage.   *Id*. (citing *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 156 (2010)).   Although Defendants presented cases in which the "benefit of the bargain" theory was successful at the motion to dismiss stage, the Court finds that those cases are inapplicable given the current posture of this case.

In *McGee*, *Birdsong*, and *Moreno*, the plaintiffs failed to allege a misrepresentation that they relied on when purchasing the product.  *See McGee v. S-L Snacks Nat'l,* 982 F.3d 700, 706 (9th Cir. 2020); *Birdsong v. Apple Inc.,* 590 F.3d 955, 961 (9th Cir. 2009); *Anthony Moreno, v. Vi-Jon, LLC.,* 20CV1446 JM(BGS), 2021 WL 5771229, at *1 (S.D. Cal. Dec. 6, 2021).  In *McGee*, for example, the court found that plaintiff did not contend any misrepresentations were made about Pop Secret's health and safety and that her purchase was not made on the basis of false or misleading representations.  *See* 982 F.3d

at 706.  The artificial trans-fat in the popcorn, at issue in the case, was included in the nutritional label on the product box, and the plaintiff did not allege that the product made any representations about its safety.  *See id*.  Similarly, in *Birdsong*, the court held that the plaintiff had not been deprived of an agreed-upon benefit because the plaintiff did not allege that Apple had provided any misrepresentation as to using the Apple iPod at high volumes, but only alleged a potential risk in using the product at high volumes for an extended period of time.  *See* 590 F.3d at 961.  Even more, Apple had provided a warning against the use of the device in that manner.  *See id*.  Finally, in *Moreno*, the misrepresentation alleged was not present on the product label because the plaintiff alleged that the product represented that it could kill 99.99% of *all* germs, whereas the product label stated that it could kill 99.99% of *common* germs.  *See* 2021 WL 5771229 at *4.  Given the misrepresentation alleged was not advertised on the product and was just assumed to be on the product's label, the court found that the plaintiff was not deprived of an agreed-upon benefit of the product.  *See id*. at *7.  Here, by contrast, Plaintiff points to two distinct representations—the Efficacy Representation and Skin Safety Representation—as representations that led her to purchase the product.  (*See, e.g.*, FAC ¶ 10.)  Defendants do not argue that these representations are not included on the product's label, making this case unlike *McGee*, *Birdsong*, and *Moreno*.  *See McGee*, 982 F.3d at 706; *Birdsong*, 590 F.3d at 961; *Moreno*, 2021 WL 5771229 at *4.  Plaintiff alleges actual misrepresentations she relied upon that are included on the product's label.  Consequently, as pled, Plaintiff adequately has established materiality at the motion to dismiss stage.

In *Boysen* and *Herrington*, the plaintiffs did not make claims to distinct misrepresentations but proffered that there might potentially be a misrepresentation on the product's label.  *See Boysen v Walgreens Co.*, No. C 1-06262 SI, 2012 WL 2953069 at *7 (N.D. Cal. July 19, 2012); *Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597 CW, 2010 WL 3448531, at *3 (N.D. Cal. Sept. 1, 2010).  In *Herrington*, the court found that the plaintiffs did not adequality allege that the product misrepresented

that it was safe to use and only alleged misrepresentations in uncertain terms.  *See* 2010 WL 3448531, at *3.  The plaintiffs did not allege that the product was carcinogenic for humans and unfit or unsafe for use; instead the plaintiffs alleged that the ingredients used in the product were "probable" human carcinogens.  *See id.*  In *Boysen*, the court used the logic of *Herrington* to find the plaintiff had no standing to assert that the defendant's juices were mislabeled as safe and healthy because the plaintiff did not expressly allege that the levels of lead and arsenic contained in the defendant's juices would likely cause physical harm.  *See* 2012 WL 2953069, at *7.  Further, the court in *Boysen* provided examples of incidences that would warrant standing but that were not presented by the plaintiff, including the products functioned less well than advertised, a recall had occurred, and "*had defendant's juice been differently labeled then he would have purchased an alternative juice*."  *See id.* (emphasis added).

Here, Plaintiff does not allege that Defendants' representations are "probably" false but claims that they are "literally" false.  (*See* Opp'n at 6.)  Plaintiff presents studies and facts to establish that Wet Ones does not combat certain diseases that comprise more than 0.01% of germs and contains ingredients that are known and established skin irritants, making the product's representations allegedly false.  (*See* FAC ¶¶ 22–106.) Plaintiff further alleges that (1) Wet Ones provided Efficacy and Skin Safety Representations, (2) these Representations were false, (3) Plaintiff saw and relied on the labels—and their Representations—for their truth in purchasing Wet Ones, and (4) Plaintiff would not have bought Wet Ones otherwise.  (*See generally id.*)  The allegations here surpass those presented in both *Herrington* and *Boysen*.  *See Herrington*, 2010 WL 3448531, at *3; *see also Boysen*, 2012 WL 2953069, at *7.  Plaintiff also claims that, had she known that the Representations were not true, she would not have purchased the product, which fits squarely into *Boysen*'s framework.  *See Boysen*, 2012 WL 2953069 at *7.  The allegations therefore satisfy the requirement of standing. *See Moore*, 966 F.3d at 1007 (Ninth Circuit holding that although the plaintiffs did "not provide much detail in their individual allegations," they still alleged that "as a result of

the false and fraudulent prescription requirement, each Plaintiff paid more for [the product] than each Plaintiff would have paid in the absence of the requirement or would never have purchased [the product]").

Thus, the Court **DENIES** Defendants' Motion on this ground.

## II.   The Reasonable Consumer Test Under the UCL, FAL, and CLRA

California has enacted several consumer protection statutes to protect its citizens from unfair, deceptive, or fraudulent business practices.  California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice."   Cal. Bus. & Prof. Code § 17200.   California's FAL prohibits any "unfair, deceptive, untrue or misleading advertising," Cal. Bus. & Prof. Code § 17500, and any FAL violation amounts to a UCL violation.  *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (2002)).   Finally, California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  Courts often analyze claims under the UCL, FAL, and CLRA together "because they share similar attributes."  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014).

Claims under all three of these statutes are subject to the "reasonable consumer test."  *Williams*, 552 F.3d at 938 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).   The reasonable consumer test requires a probability that a "significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks omitted).   At the pleading stage, courts have dismissed cases under the reasonable consumer test only in select circumstances, particularly where the "alleged violations of the UCL, FAL, and CLRA are simply not plausible."  *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014).   "[I]f common sense would not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage."  *Moore*, 966 F.3d at 1018.

/ / /

### A.     The Efficacy Representations

Plaintiff alleges that Defendants' Efficacy Representations are false and that a reasonable consumer would be misled by the Defendants' representations.  (*See* Opp'n at 7.)  According to the Ninth Circuit in *Moore*, although literal truth can sometimes provide protection from a misleading claim, "there is no protection for literal falseness."  *See Moore*, 966 F.3d at 1017–19 (finding that the "[p]laintiffs have sufficiently alleged a deceptive practice under the reasonable consumer test" where pet food was labeled as "prescription" but had no governmental oversight or medicinal properties).

On the front of Wet Ones' packaging, it states that the product "Kills 99.99% of Germs" and, on the back panel, it states that:

 Wet Ones® Antibacterial Hand Wipes kill 99.99% of germs and wipe away dirt, providing a better clean than hand sanitizers.  They are specially formulated to be tough on dirt and germs, yet gentle on skin, so you can confidently keep your hands fresh and clean when soap and water are not available.

(FAC ¶ 25; *see also* ECF No. 58-2 ("Ex. A").)  The Court previously held that "Plaintiff does not explain how or why a reasonable consumer would take a wet wipe's representation that it kills 99.9 percent of germs to mean that it would also be effective against HPV. . . or the norovirus or polyomavirus."  (*See* ECF No. 54 ("Order") at 10.) In addition, the Court found that a "reasonable consumer would likely suspect that a hand wipe would be effective against bacteria often found on hands," but in the initial Complaint, Plaintiff did not allege how the strains of bacteria listed would be transmissible by hand.  (*Id*.)

The Court accepts as true that Wet Ones are ineffective against the diseases listed in Plaintiff's First Amended Complaint and that, taken together, these disease-causing microorganisms comprise more than 0.01 percent of germs.  (*See* FAC ¶¶ 29–30.)  Based on the representations made on front and back labels for Wet Ones, however, the Court finds that a reasonable consumer would necessarily assume that the product kills 99.99% of germs that are transmissible by hand.  With that expectation of the reasonable

consumer in mind, the Court concludes that Plaintiff has failed adequately to allege that Defendant's Efficacy Representation is false.  More specifically, Plaintiff fails to allege that the diseases identified in the First Amended Complaint that cannot be killed by Wet Ones comprise more than 0.01% of germs transmissible by hand.

### 1.   *Wet Ones Only Applies to Germs Transmissible by Hand*

As an initial matter, Plaintiff argues that only the front label should be examined when assessing a reasonable consumer's expectation of Wet Ones.  (*See* Opp'n at 11.) The Court disagrees.

At the motion to dismiss stage, qualifying language on packaging, usually on the back label, that clarifies the meaning of the alleged misrepresentation can "ameliorate any tendency of the label to mislead, as would violate California's False Advertising Law (FAL), Unfair Competition Law (UCL), and Consumer Legal Remedies Act (CLRA)." *See Moore*, 966 F.3d at 1017.  However, "if a back label ingredients list conflicts with, rather than confirms, a front label claim, the plaintiff's claim is not defeated."  *See id*; *see also Moreno*, 2021 WL 807683, at *11 (finding that the product's representation that it kills 99.99% of germs including an asterisk that directed consumers to the back panel of the product, which clarified the product was "[e]ffective at eliminating 99.99% of many *common* harmful germs & bacteria," was enough to inform consumers that the product would not kill *all* germs).  Plaintiff cites *Williams* to emphasize that a back label statement cannot cure false representation on the front label.  (*See* Opp'n at 10 (citing *Williams*, 552 F.3d at 939).)  In *Williams*, the court found that reasonable consumers should not be "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *See Williams*, 552 F.3d at 939.  The court in *Williams* further elaborated that "the FDA [does not] require[] an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations. . . .  Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." *See id.* at 939–40.

*Williams* and *Moore* do not contradict one another.  Both *Williams* and *Moore* direct courts to disregard the back label when it contradicts a front label claim.  *Compare Moore*, 966 F.3d at 1017, *with Williams*, 552 F.3d at 939.  Here, the qualifying language on the back label does not contradict the front label, but rather confirms the product's proper use.  Thus, both labels can be read to assess whether a reasonable consumer would be deceived by Wet Ones' advertisement.

Here, there are two occurrences of qualifying language on the back label that Defendants claim help clarify the Efficacy Representation.  First, Defendants note the representation that, "you can confidently keep your hands fresh and clean *when soap and water are not available*."  (*See* Mem. at 7–8.)  The Court disagrees with the significance Defendants ascribe to that statement.  Just by referencing that Wet Ones may be used to keep hands fresh and clean when soap and water are not available does not mean that a reasonable consumer would assume that Wet Ones do not kill germs as effectively as washing one's hands.  Rather, the Court finds that a reasonable consumer would read the qualifying statement to merely indicate that Wet Ones may be used as a substitute to clean one's hands when washing with soap and water is not an option.

Second, Defendants point to the qualifying language on the back label of Wet Ones regarding using the product to keep "*hands* fresh and clean," and the "Directions for Use" explicitly stating that the product should be "appl[ied] to *hands*."  (*See* Mot. at 6–7.)  The front label also explicitly states, beneath the large Wet Ones text, "Antibacterial *Hand* Wipes."  (*See* Ex. A) (emphasis added.).  The Court concludes that a reasonable consumer would not read the various references to "hands" as meaning Wet Ones is a product to be used in disinfecting surfaces or surrounding air particles.  This point is bolstered by Plaintiff's own admission to purchasing the products for use on her "hands." (*See* FAC ¶ 109.)   The Court is not persuaded by the various reviews, provided by Plaintiff, from blogs and retail stores stating that the Wet Ones were used on surfaces with the purpose of disinfecting surfaces.  (*See* FAC ¶¶ 114–51.)  Consumers acting reasonably in the circumstances would not believe that "hand wipes," which are clearly

marked as such on the front and back of the package, (*see* Ex. A), would function identically to wipes intended to clean surfaces. *See Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (finding that a reasonable consumer would not believe that "Crunch Berries" are derived from real fruit because the packaging clearly denotes otherwise, stating that the product is a "SWEETENED CORN & OAT CEREAL").

Here, allegations that the product is ineffective at disinfecting surfaces or air particles are not instructive in evaluating the Wet Ones Efficacy Representation. For the Efficacy Representation to be considered false and misleading, Plaintiffs need to allege sufficient facts to establish that Wet Ones do not kill 99.99% of germs that are transmissible by hand. As set forth below, the First Amended Complaint fails to meet that requirement.

### 2. Plaintiffs Do Not Sufficiently Allege That 0.01% of Germs Not Effectively Eliminated by Wet Ones Are Transmissible by Hand

In resolving the pending Motion, the Court finds that it can only properly consider those diseases and pathogens that Plaintiff has described as diseases transmissible by hand *and* that are typically prevented by ensuring one's hands are clean. In combing through the extensive lists of pathogens and diseases provided by Plaintiff, the First Amended Complaint provides that only norovirus,[1] HPV,[2] Pseudomonas aeruginosa,[3] C.

/ / /

/ / /

/ / /

---

[1] Norovirus is a non-enveloped virus that causes inflammation of the stomach and intestines and can be spread through hands. (*See* FAC ¶ 47.) Norovirus can be found on contaminated surfaces. (*See id.*)

[2] HPV, a non-enveloped virus, is "transmitted . . . by contact with someone who is carrying the virus on their hands or fingers or by touching something that someone else touched who carried HPV on their hands." (*See* FAC ¶ 48.)

[3] Pseudomonas aeruginosa, a gram-negative virus that can cause blood infections and pneumonia, can be transmitted by hand. (*See* FAC ¶¶ 51–52.)

difficile,[4] Toxoplasmosis,[5] and Cryptosporidium[6] are transmissible by hand.  (*See* FAC ¶¶ 47–71.)   Plaintiff does not provide any facts that could support that all other diseases and pathogens listed in Plaintiff's First Amended Complaint are transmissible by hand.  (*See generally* FAC.)   Therefore, the Court will assume that only norovirus, HPV, Pseudomonas aeruginosa, C. Difficile, Toxoplasmosis, and Cryptosporidium are relevant to this case.

The list narrows even further when assessing whether these diseases can be prevented by ensuring that one's hands are clean.  There are diseases that exist that may be transmissible by hand but that would not be prevented by washing one's hands or using hand sanitizers; thus, a reasonable consumer would not purchase Wet Ones with the anticipation of preventing those diseases.  Here, based on Wet Ones' representation, it can only be assumed that Wet Ones serves as an alternative to washing hands and to hand sanitizers, not for other medical treatments.  Plaintiff only provides facts alleging that washing hands with soap and water or keeping one's hands clean is a preventative measure in reducing infection rates for Norovirus,[7] Pseudomonas aeruginosa,[8] and C.

---

[4] C. difficile is a major spore forming bacteria that causes diarrhea.  (*See* FAC ¶ 60.)  "If someone with C. diff. (or caring for someone with C. diff.) doesn't clean their hands with soap and water after using the bathroom, they can spread the germs to everything they touch."  (*See id.* ¶ 61; *see also id.* ¶ 63.)

[5] Toxoplasmosis is a parasite that is commonly found in cat litter and undercooked food.  (*See* FAC ¶ 67.)  According to the CDC, toxoplasmosis can be transmitted from cats to humans "if, for example, a human touches something that has come into contact with a cat feces that contains toxoplasma, including after cleaning a litter box."  (*See id.* ¶ 68.)

[6] Cryptosporidium is responsible for causing gastrointestinal symptoms, including vomiting and diarrhea.  (*See* FAC ¶ 69.)  Human hands can be contaminated by cryptosporidium in a number of ways, including by touching surfaces or objects (such as bathroom fixtures or toys) that are contaminated, or by changing diapers or caring for an infected person.  (*See id.* ¶ 71.)

[7] To prevent norovirus, the CDC recommends cleaning hands with soap and water after using the toilet, changing diapers, eating, preparing or handling food and giving yourself or someone else medicine. (*See* FAC ¶ 7.)

[8] The best way to prevent Pseudomonas aeruginosa infection is to wash one's hands often.  (*See* FAC ¶¶ 51–52.)

Difficile.[9]  Plaintiff does not explicitly allege that one can prevent HPV, Toxoplasmosis, or Cryptosporidium by washing one's hands.   In fact, Plaintiff provides evidence establishing the opposite.  For example, Plaintiff alleges that Cryptosporidium is "very difficult to kill. . . [and] can survive for many days in chlorinated water in pools and on surfaces disinfected with chlorine bleach."  (*See id.* ¶ 70).  The use of Wet Ones could not be assumed to be able to prevent Cryptosporidium when the virus is difficult to kill and continues to live even when surfaces are disinfected.  A reasonable consumer would not purchase Wet Ones to prevent diseases that would not be preventable by ensuring that their hands are clean.

Consequently, Plaintiff has adequately alleged that only norovirus, Pseudomonas aeruginosa, and C. difficile are transmissible by hand and preventable by keeping one's hands clean.[10]   None of the reviews and comments provided by Plaintiff, however, provide that a consumer purchased Wet Ones in anticipation of combating norovirus, Pseudomonas aeruginosa, or C. difficile.  (*See* FAC ¶¶ 114–51.)   The majority of comments selected by Plaintiff were customers that purchased Wet Ones to help protect themselves from coronavirus or COVID-19.  (*See id.*)  Here, the Court finds that a reasonable consumer would not buy Wet Ones in anticipation of combating a small population of viruses, not well known as diseases transmissible by hand, and not alleged to comprise more than 0.01% of germs.

Further, the Court finds Plaintiff's argument that most people misapply Wet Ones, making the product less effective, to be conclusory, speculative, and largely irrelevant. Plaintiffs cite a Wall Street Journal article, stating that "laboratory findings that hand

---

[9] "Washing with soap and water is the only way to prevent the spread of C. Diff."  (*See* FAC ¶¶ 61, 63.)

[10] Plaintiff does allege in her First Amended Complaint that washing one's hands can be an effective way to prevent COVID-19.  (*See* FAC ¶ 169.)  Plaintiff further states that Wet Ones are ineffective or less effective at denaturing the microbes responsible for COVID-19.  (*See id.* ¶¶ 56, 58.)  The Court, however, finds the allegations related to COVID-19 to be speculative and insufficient.  Indeed, the First Amended Complaint fails sufficiently to allege either that COVID-19 is transmissible by hand or that Wet Ones are *ineffective* at eliminating COVID-19 from one's hands.

sanitizers kill 99.99% of germs do not translate to actual use, where the products kill far less than 99.99% of germs." (*See id.* ¶¶ 6, 77).   Plaintiff points out that "one study [discussed in the same article] conducted among eighth grade students, . . . [in which] three popular hand sanitizer brands were found to kill between 46% to 60% of microbes[, is] a far cry from the 99.99% kill rate that is touted by Defendants." (*See id.* ¶¶ 7, 78.) Neither of the proffered statements, however, mention Wet Ones and there is no reason to conclude that the observations or findings documented in the Wall Street Journal pertain to the Wet Ones product.  Further, it is doubtful that consumer misuse or misapplication of a product can ever substantiate a claim for unfair, deceptive, or fraudulent business practices.

In sum, Plaintiff has not adequately alleged facts that establish that diseases transmissible by hand, preventable by keeping one's hands clean, and unresponsive to Wet Ones, total more than 0.01% of germs.  The Court therefore **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's claims related to Defendants' Efficacy Representation for failure to satisfy the reasonable consumer test.

### B.   The Skin Safety Representations

According to Plaintiff, although Defendants label their hand wipes as "hypoallergenic" and "gentle," the hand wipes contain various ingredients that are "known allergens or skin irritants." (*See* Opp'n at 11; *see also* FAC ¶ 85–104.) Previously, the Court found Plaintiff's claims to be unsubstantiated because Plaintiff did not explain how or why a reasonable consumer would take "hypoallergenic" and "gentle" to mean that the hand wipe is *entirely* free of allergen or skin irritants.  (*See* Order at 11.) Consequently, Plaintiff no longer alleges that a reasonable consumer would interpret the products as posing *no* risk of skin irritation. (*See* Opp'n at 11.)  Instead, she claims that a reasonable consumer would not expect that the products would contain *numerous* known skin irritants.  (*See id.*)  In support, Plaintiff quotes *Kellman v. Whole Foods Market, Inc.*, 313 F. Supp. 3d 1031 (N.D. Cal. 2018), in which the court found "that if a skin sensitizer makes up more than .01% of a product or if a product contains a sensitizer that

may elicit an allergic response at concentration smaller than 0.1%, the entire product is a skin sensitizer and is therefore not hypoallergenic." *See id.* at 1050.  Plaintiff further notes that the court in *Kellman* reasoned that, although various interpretations of "hypoallergenic" may be presented, the resolution of the meaning and proper usage of the term is not a question to be resolved at the motion to dismiss stage. *See id*. at 1050–51.

The Court is not persuaded by *Kellman's* specific 0.01% metric in assessing whether a product is "hypoallergenic," and assumes that the percentage in *Kellman* was based on case-specific details.  Rather, the instructive portion of the *Kellman* decision flows from the court's consideration of the plaintiff's specific allegation that the challenged skin care product labeled as hypoallergenic "caused skin sensitizations in a substantial number of people . . . and thus a reasonable consumer would likely be deceived by th[e] 'hypoallergenic' label." *See id*. at 1050.  While the *Kellman* court found that claim sufficient to state a cause of action under the CLRA, FAL and UCL, *see id*., Plaintiff's allegations in her First Amended Complaint fail to focus on how a reasonable consumer would interpret the "hypoallergenic" labeling as it relates to the <u>effect</u> of the product rather than the <u>chemical composition</u> of the product, *i.e.*, whether Wet Ones are less likely to cause an allergic reaction, regardless of the actual composition of ingredients.[11]

The Court finds persuasive the reasoning in *Rugg v. Johnson & Johnson*, No. 17-CV-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018).  In *Rugg*, the plaintiffs challenged Johnson & Johnson's use of the word "hypoallergenic" on the product labels of its baby products. *See id.* at *1.  The plaintiffs argued that using the word "hypoallergenic" was misleading because the products contained "known skin

---

[11]  "Hypoallergenic" means "having little likelihood of causing an allergic response," (https://www.merriam-webster.com/dictionary/hypoallergenic), or "below average" or "slightly" allergenic, meaning that something (usually cosmetics, pets, textiles, food, etc.) causes fewer allergic reactions, (https://en.wikipedia.org/wiki/Hypoallergenic).  Hypoallergenic cosmetics are products that manufacturers claim produce fewer allergic reactions than other cosmetic products, (https://www.fda.gov/cosmetics/cosmetics-labeling-claims/hypoallergenic-cosmetics).

sensitizers[;] known skin or eye irritants, carcinogens, teratogens, mutagens, or pollutants[;] and substances that have not been adequately assessed for safety or skin sensitization potential." *See id.* at *2 (internal quotation marks omitted). The court found it "completely implausible" that a reasonable consumer would take "hypoallergenic" on a product's label to mean that the product does not contain "*any* ingredients, in any concentration, which could 'sensitize' the skin, cause cancer, or have *any* other negative effect, regardless of whether such effect constitutes an allergic reaction." *Id.* at *3 (emphasis in original). Like the plaintiff in *Rugg*, Plaintiff here assumes that because Wet Ones contains skin allergens, the representation that the product is hypoallergenic is false. Establishing that Wet Ones has ingredients that may be skin sensitizers, however, is not enough to show that it is not hypoallergenic. Plaintiff does not allege that any allergic reactions occurred after using the product or that Wet Ones have a higher likelihood of causing a reaction compared to similar products on the market. Thus, Plaintiff fails sufficiently to allege that Defendants' use of the term "hypoallergenic" is either false or misleading.

Further, the Court reaffirms its previous decision that "hypoallergenic" and "gentle" do not suggest anything about how the hand wipes may affect the central nervous system, lungs, eyes, kidneys, or the liver, as Plaintiff argues. (*See* FAC ¶¶ 91, 92, 94–99.) The Court finds this theory implausible. A reasonable consumer would not interpret "gentle" and "hypoallergenic" to mean that Wet Ones hand wipes would have no possibility of adverse health effects if ingested, inhaled, or used on their eyes. (*See id.* ¶¶ 97, 98, 101.)

Based on the above analysis, that the Court finds that Plaintiff does not sufficiently allege that the Skin Safety Representation is false or that a reasonable consumer, after reading that the product is "hypoallergenic," would assume that Wet Ones has no potential allergens. Plaintiff does not adequately allege that Wet Ones are more likely to cause an allergic reaction compared to other similar products. The Court therefore **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's claims related to

Defendant's Skin Safety Representation for failure to satisfy the reasonable consumer test.

## III.   Breach of Express Warranty

"To state a claim for breach of express warranty under California law, a plaintiff must allege: '(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.'" *Portelli v. WWS Acquisition, LLC*, No. 17-CV-2367 DMS (BLM), 2018 WL 9539773, at *5 (S.D. Cal. July 6, 2018). Here, Plaintiff's claim fails as to the Efficacy Representation because Defendants never promised that the hand wipes would kill 99.99 percent of *all* germs, as Plaintiff suggests, or even those specifically identified in the First Amended Complaint. Thus, no express warranty was breached. Plaintiff's claim regarding the Skin Safety Representation also fails. The Defendants' "hypoallergenic" representation is not false or misleading; thus, no express warranty was breached. *See Myers-Taylor v. Ornua Foods N. Am., Inc.*, No. 3:18-CV-01538-H-MDD, 2019 WL 424703, at *6 (S.D. Cal. Feb. 4, 2019) (finding that the defendants did not breach an express warranty because it did not promise what the plaintiffs alleged). The Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's breach of express warranty claim.

## IV.   Quasi-Contract

Plaintiff's claim for quasi-contract, or unjust enrichment, also fails as to both the Efficacy and Skin Safety Representations. A quasi-contract claim typically involves a plaintiff seeking the return of a benefit that the defendant had unjustly gained through "mistake, fraud, coercion, or request." *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Absent fraud, Plaintiff has no claim for unjust enrichment. *See Myers-Taylor*, 2019 WL 424703, at *6 ("[T]o succeed in an unjust enrichment claim, a plaintiff must show some fraud."). Here, no fraud has been shown as to either Defendants' Efficacy Representation or Skin Safety Representation. The Court therefore **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's quasi-contract claim.

**V.      Lack of Adequate Remedy of Law**

Finally, Plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). "It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." *See id.* (citations omitted). In *Sonner*, the Ninth Circuit affirmed the dismissal of the plaintiff's UCL and CLRA claims for equitable restitution because the plaintiff failed to: (i) allege she lacked an adequate remedy at law, and (ii) show she lacked an adequate remedy at law for damages under CLRA. *See id.* at 844–45. In *Sonner*, the court found that the plaintiff sought the same sum in equitable restitution as "a full refund of the purchase price—$32,000,000—[which] she requested in damages to compensate her for the same past harm." *See* 971 F.3d at 844. The court in *Sonner* denied the plaintiff's claim because she failed to "explain how the same amount of money for the exact same harm is inadequate or incomplete." *See id.*

The Court agrees with Plaintiff that *Sonner* is inapplicable because it does not apply to claims of false advertising that may result in a future harm, which Plaintiff is alleging here. (*See, e.g.*, FAC Prayer ¶ D; *see also* Opp'n at 22.) In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), the court allowed a previously deceived consumer "to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *See id.* at 969. Courts applying California law continue to find that plaintiffs may seek equitable relief under California's consumer protection laws where the claims are premised on alleged future harm. *See, e.g.*, *Mier v. CVS Pharmacy, Inc.*, No. SACV2001979 DOC (ADS), 2021 WL 1559367, at *13 (C.D. Cal. Mar. 22, 2021) ("Although *Sonner* only spoke about restitution for past harms, various district courts have since found that the decision applies to equitable claims for injunctive relief based on future harm as well."); *see also Roper v. Big Heart*

*Pet Brands, Inc.*, No. 119CV00406DADBAM, 2020 WL 7769819, at *8–9 (E.D. Cal. Dec. 30, 2020) ("An actionable cognizable injury exists where a plaintiff alleges that they cannot rely on defendant's labeling when deciding whether to purchase products in the future.").

As in *Davidson*, Plaintiff seeks relief based on a likelihood of future harm for which there is no adequate remedy at law; therefore, Plaintiff has properly sought and alleged entitlement to an equitable remedy. *See Davidson*, 889 F.3d at 969–70 (finding that a previously deceived consumer may have standing to seek an injunction against false labeling where they assert that they will be unable to purchase the product in the future although they would like to or that they may reasonably but incorrectly assume the product was improved). Consequently, the Court **DENIES** Defendants' Motion as to Plaintiff's claims for equitable restitution.

## CONCLUSION

Because Plaintiff's claims under the UCL, FAL, and CLRA do not pass the reasonable consumer test, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's first through third causes of action. Further, because Plaintiff has not adequately alleged that Defendants breached an express warranty or committed a fraudulent act to establish unjust enrichment, the Court **GRANTS** Defendant's Motion **DISMISSES** the remaining state law claims. Plaintiff will have <u>thirty (30) days</u> from the date of this Order to file an amended complaint. *Should Plaintiff fail timely to file an amended complaint, the Court will enter an Order dismissing this action without prejudice.*

**IT IS SO ORDERED.**

Dated: February 16, 2022

Honorable Todd W. Robinson
United States District Judge