UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN SOUTER, individually, and on behalf of others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>EDGEWELL PERSONAL CARE COMPANY; EDGEWELL PERSONAL CARE BRANDS, LLC; and EDGEWELL PERSONAL CARE, LLC,<br><br>  Defendants. | Case No.: 20-CV-1486 TWR (BLM)<br><br>**ORDER GRANTING WITH PREJUDICE DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>(ECF No. 68) |

Presently before the Court is Defendants Edgewell Personal Care Company; Edgewell Personal Care Brands, LLC; and Edgewell Personal Care, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion," ECF No. 68). Plaintiff Lauren Souter filed a Response in Opposition ("Opp'n," ECF No. 69) and Defendants filed a Reply in Support of the Motion ("Reply," ECF No. 70). The Court heard oral argument on the Motion on June 9, 2022. (*See generally* ECF No. 71.) Having carefully considered Plaintiff's Second Amended Complaint ("SAC," ECF No. 63), the Parties' arguments, and the law, the Court **GRANTS WITH PREJUDICE** Defendants' Motion.

/ / /

**FACTUAL ALLEGATIONS**

Plaintiff initiated this putative class action against Defendants alleging misleading representations associated with their antibacterial hand wipes, known as "Wet Ones," which Plaintiff purchased multiple times during the class period. (*See* SAC ¶¶ 1, 121.) Plaintiff alleges that the misleading representations violate California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL") and the California Consumer Remedies Act ("CLRA"). (*See generally* SAC.) Plaintiff further alleges breaches of express warranty and quasi-contract. (*Id.*) Two representations are at issue: (1) that the hand wipes kill 99.99 percent of germs (the "Efficacy Representations"); and (2) that the hand wipes are "hypoallergenic" and "gentle" (the "Skin Safety Representations"). (*See id.* ¶¶ 2, 13.) Plaintiff contends these representations are false and misleading and would likely deceive reasonable consumers. (*See id.* ¶ 132.) When buying the hand wipes, Plaintiff alleges that she relied on the Efficacy and Skin Safety Representations on the product label. (*See id.* ¶ 143.) Had she known the truth, Plaintiff claims, she would not have purchased the hand wipes or would have purchased them on different terms. (*See id.*)

**I.    The Efficacy Representations**

Plaintiff asserts that Defendants' hand wipes do not kill 99.99 percent of germs, as stated on the product label. (*See* SAC ¶ 26.) Plaintiff alleges that the active ingredient in these hand wipes, benzalkonium chloride ("BAC"), is ineffective against certain viruses, bacteria, and spores, which comprise more than 0.01 percent of germs found on hands. (*See id.* ¶ 28.) Those diseases include pseudomonads, chlamydia, nonenveloped viruses, coccidia, and clostridium difficile. (*See id.* ¶ 48.) Plaintiff also claims that the hand wipes are ineffective against COVID-19. (*See id.* ¶ 67.) Plaintiff does not claim she purchased Wet Ones with the intention to prevent the illnesses listed in the Second Amended Complaint, or that Wet Ones failed to protect her from contracting any of the listed illnesses. (*See id.* ¶ 42.) Instead, Plaintiff claims that had she known that the

///

Efficacy Representations were false, she would have paid less for Wet Ones or would not have purchased them at all. (*See id*. ¶ 43.)

## II. The Skin Safety Representations

Plaintiff additionally claims Defendants' product label is false and misleading by stating that the hand wipes are "hypoallergenic" and "specifically formulated to be tough on dirt and germs, yet gentle on the skin." (*See* SAC ¶ 100.) Contrary to this representation, Plaintiff contends, the hand wipes contain "numerous irritating or allergenic ingredients." (*See id*. ¶ 102.)

Plaintiff does not claim that she or any of her family members suffered an allergic reaction from using Wet Ones. (*See id*. ¶ 103.) Instead, Plaintiff claims that had she known of the skin irritants and allergens in Wet Ones, she would have paid less for the hand wipes or would not have purchased them at all. (*See id*. ¶ 104.)

## PROCEDURAL BACKGROUND

Plaintiff filed her initial Complaint on July 31, 2020. (*See generally* ECF No. 1.) On October 6, 2020, Defendants moved to dismiss Plaintiff's Complaint on five grounds: (1) lack of constitutional and statutory standing, (2) failure to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b), (3) failure to satisfy the reasonable consumer test, (4) primary jurisdiction, and (5) preemption. (*See generally* ECF No. 22.) On June 7, 2021, the Court granted Defendants' motion to dismiss with leave to amend because Plaintiff failed to satisfy the reasonable consumer test. (*See generally* ECF No. 54.)

Plaintiff filed her First Amended Complaint on July 7, 2021. (*See generally* ECF No. 55.) On August 6, 2021, Defendants moved to dismiss on the same five grounds. (*See generally* ECF No. 58.) On February 16, 2022, the Court granted Defendants' motion to dismiss with leave to amend because Plaintiff, again, did not satisfy the reasonable consumer test. (*See generally* "Order," ECF No. 62.)

Plaintiff filed the operative Second Amended Complaint on March 18, 2022. (*See* ECF No. 63.) On April 8, 2022, Defendants filed the instant motion. (*See* ECF No. 68.)

# LEGAL STANDARDS

## I. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

///

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## ANALYSIS

Defendants move to dismiss the Second Amended Complaint on four grounds: (1) lack of constitutional and statutory standing; (2) failure to satisfy the reasonable consumer test; (3) preemption; and (4) primary jurisdiction. (*See generally* Motion.) Defendants also maintain that Plaintiff's claim for equitable relief should be dismissed. (*See id.*) Defendants fail to provide new arguments to change the Court's previous ruling on standing[1], preemption, or primary jurisdiction. Accordingly, the Court **REAFFIRMS** its previous Order and **DENIES** Defendants' Motion to Dismiss on the same grounds. Further, the Court **REAFFIRMS** its Order on Plaintiff's request for equitable relief and **DENIES** Defendants' Motion on that basis. The only matter left to be addressed by the Court is whether Plaintiff's Second Amended Complaint satisfies the reasonable consumer standard.

///

///

---

[1]  Defendants provide extensive briefing as to standing, however, do not provide any new evidence or facts which alter the Court's previous findings. In *Moore*, the Ninth Circuit held that although the plaintiffs did "not provide much detail in their individual allegations," they still alleged that "as a result of the false and fraudulent prescription requirement, each Plaintiff paid more for [the product] than each Plaintiff would have paid in the absence of the requirement or would never have purchased [the product]," and that is sufficient to survive a motion to dismiss. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020). The *Moore* court further reasoned that at the motion to dismiss stage, "actual reliance [to establish standing under a CLRA, UCL and FAL claim] . . . is inferred from the misrepresentation of a material fact." *Moore,* 966 F.3d at 1021. Here, Plaintiff's allegations satisfy the requirement for standing.

I. **The Reasonable Consumer Test Under the UCL, FAL, and CLRA**

California has enacted several consumer protection statutes to protect its citizens from unfair, deceptive, or fraudulent business practices. California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. California's FAL prohibits any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17500. Any FAL violation amounts to a UCL violation. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (2002)). Additionally, the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Courts often analyze claims under the UCL, FAL, and CLRA together "because they share similar attributes." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014).

Claims under all three statutes are subject to the "reasonable consumer test." *Williams*, 552 F.3d at 938 (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). The reasonable consumer test requires a probability that a "significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks omitted). At the pleading stage, courts have dismissed cases under the reasonable consumer test only in select circumstances, particularly where the "alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014). "[I]f common sense would not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020).

A. *The Efficacy Representations*

The Court again finds that Plaintiff has not sufficiently pled facts to satisfy the reasonable consumer standard as to Defendants' Efficacy Representations. Plaintiff's Second Amended Complaint largely mirrors her First Amended Complaint—with some additional facts relating to the efficacy of Defendants' product, namely, when it is applied

to hands and in combating diseases spread by one's hands. (*See* SAC ¶¶ 28, 32, 44, 47, 58, 64, 74, 86.) Plaintiff's allegations that Defendants' Efficacy Representations are misleading and false, is two pronged: (1) Wet Ones are ineffective under real-world conditions, and (2) Wet Ones do not kill numerous common germs that are transmissible by hands. (*See* Opp'n at 4; *see generally* SAC.) Those contentions are addressed below.

### 1.   Ineffective Under Real-World Conditions

Plaintiff alleges that the real-world condition of a consumers' hands substantially decreases the effectiveness of Wet Ones. (*See* SAC ¶ 95; Opp'n at 4.) According to Plaintiff, Defendants' Efficacy Representations fail to take this decrease in effectiveness into account, leading Defendants to overestimate the success of Wet Ones' ability to kill germs in real-world conditions as opposed to "optimal" laboratory conditions. (*See* SAC ¶ 95; Opp'n at 4.) Plaintiff thus asserts that a reasonable consumer, who intends to use the product in real-world conditions, could be misled by the Efficacy Representations. (*See* SAC ¶ 95; Opp'n at 4.) The Court finds Plaintiff's arguments unpersuasive as they are conclusory and not adequately supported by facts alleged in the Second Amended Complaint.

Plaintiff asserts that "[h]ands that are dirty, greasy or grimy vastly limit the ability of the Products to kill germs," and are not accounted for when the product is tested in laboratory conditions. (*See* SAC ¶¶ 32–33.) Plaintiff uses an independent study, cited previously in the First Amended Complaint, to illustrate that Wet Ones are ineffective in real-world conditions. (*See* SAC ¶¶ 93–95.) The study was done for a different hand sanitizer, Soapopular, found to be largely ineffective in combating germs, killing "only 46% of the germs on . . . hands." (*See id.*) Plaintiff asserts that the study is demonstrative of the effectiveness of Wet Ones in real-world conditions, as both Soapopular and Wet Ones contain BAC as their active ingredient. (*See id.*) Plaintiff argues that Wet Ones "are similarly ineffective or even less effective than the tested Soapopular sanitizer because the [Wet Ones] contain a lower concentration of BAC,"
/ / /

resulting in the Efficacy Representations being a gross overestimation of Wet Ones' effectiveness against germs. (*See* Opp'n at 4; SAC ¶ 9.)

The cited study is irrelevant, and Plaintiff's arguments derived from that study are both speculative and conclusory. *See Twombly*, 550 U.S. at 555. First, the study uses an entirely different product, Soapopular (a hand-sanitizer not a hand wipe), where the only known similarity between Soapopular and Wet Ones is that each contain BAC as an active ingredient. (*See id.*) Second, the study was narrowly tailored to only include one population of eighth grade students. (*See* SAC ¶ 8.) A study this narrow, specific, and targeted, cannot reasonably be applied to all sanitization products on the market. Plaintiff includes this study, and only this study, to assert that Wet Ones are ineffective in real-world conditions and that Wet Ones mislead consumers by using Efficacy Representations based on "optimal" laboratory conditions. (*See* Opp'n at 4; SAC ¶ 92.) The allegations in the SAC are not legally sufficient. To meet the pleading standard, Plaintiff needs to go beyond speculative and conclusory assertions and allege facts that are supported by relevant information. *See Twombly*, 550 U.S. at 555. Plaintiff has failed to adequately plead either that Wet Ones are ineffective in real world conditions, or that Defendants' Efficacy Representations are overestimated because they are based on "optimal" laboratory conditions.

2.  *Wet Ones' Ability to Prevent Diseases Transmissible by Hand*

Plaintiff argues that BAC cannot kill numerous germs which are transmissible by hand, including common germs, making Defendants' Efficacy Representations false.[2] (*See* Opp'n at 4.) The SAC does list the impact of various diseases, their ability to be transmitted by hand, and the inability of Wet Ones to kill the germs associated with the

---

[2] Defendants argue that the efficacy of Wet Ones should be based on their proper usage as *hand* wipes. (*See* Motion at 7–8.) As the Court previously concluded, a reasonable consumer would not read the various references to 'hands' to mean Wet Ones are a product to be used to disinfect surfaces or surrounding air particles. (*See* Order at 15.) Further, Plaintiff concedes that "the Products are not understood by consumers to be surface wipes or are effective as such." (*See* Opp'n at 10.) Accordingly, the Court's assessment relies on Wet Ones' proper usage.

listed diseases.³ However, Plaintiff fails to allege facts to show that the diseases listed in her Second Amended Complaint are typically prevented by ensuring one's hands are clean. (*See generally* SAC.) The Court previously specifically instructed Plaintiff what facts would be necessary to meet the reasonable consumer standard in this instant case. (*See* Order at 16.) When evaluating whether Defendants' Efficacy Representations are misleading or false, the Court "can only properly consider those diseases and pathogens that Plaintiff has described as diseases transmissible by hand *and* that are typically prevented by ensuring one's hands are clean." (*See* Order at 16.) As the Court noted, "[t]here are diseases that exist that may be transmissible by hand but that would not be prevented by washing one's hands or using hand sanitizers; thus, a reasonable consumer would not purchase Wet Ones with the anticipation of preventing those diseases." (*See* Order at 17.)

Plaintiff now argues that it is premature to assume a consumer's expectations when purchasing the product, as a consumer's knowledge of "(i) how germs are transmitted, (ii) how germs are killed, and (iii) the importance of hand washing or hand hygiene" are unknown at this stage. (*See* Opp'n at 13.) Plaintiff concedes that "[n]one of these material facts have been pled or otherwise established."⁴ (*See id*. at 13.) Further,

---

³ Plaintiff provides several examples of diseases that are transmissible by hand and that Wet Ones do not prevent, including, (1) approximately 25 strains of norovirus, which is found on and transmissible by hands, (s*ee* SAC ¶¶ 52−56); (2) more than 100 varieties of HPV, which is transmissible by hands and causes common warts on the hands and fingers of about one-fourth of all people in the United States, (*see* SAC ¶¶ 58−61); (3) C. difficile, which causes between 15-55% of all diarrheas and can be spread through touch, (*see* SAC ¶¶ 75−77); (4) the pathogen causing toxoplasmosis, which could be transmitted by hands, responsible for 40 million infections in the United States, (s*ee* SAC ¶¶ 84−86); and (5) certain coronaviruses found on human hands (s*ee* SAC ¶ 73.).

⁴ The parties disagree whether the back panel statement on the Wet Ones should be considered. (*See* Opp'n at 13; Motion at 7.) A reasonable consumer would read the qualifying statement on the back of the product "to merely indicate that Wet Ones may be used as a substitute to clean one's hands when washing with soap and water is not an option" and as further evidence that the product should only be used to remove germs on one's hands. (*See* Order at 15.) Because the Court finds the qualifying language on the back label does not contradict the front label, but rather confirms the product's proper use, both labels can be read to assess whether a reasonable consumer would be deceived by Wet Ones' advertisement. *See Moore*, 966 F.3d at 1020.

1  Plaintiff asserts that discovery is a necessary precondition to properly analyzing the
2  complex nature of consumer behavior. (*See* Opp'n at 11.) However, to satisfy the
3  reasonable consumer test, Plaintiff must allege that a "significant portion of the general
4  consuming public or of targeted consumers, acting reasonably in the circumstances, could
5  be misled." *Ebner*, 838 F.3d at 965. Discovery is not necessary to make that base level
6  allegations, and no analysis of the complex nature of consumer behavior is required to
7  meet the standard at the motion to dismiss stage. The Court previously suggested one
8  way that Plaintiff could meet the standard, by providing a list of the diseases that Wet
9  Ones does not prevent, that comprise more than .01% of diseases transmissible by hand,
10 and that are preventable by keeping ones' hands clean. (*See* Order at 17.) Plaintiff does
11 not provide this additional information in her Second Amended Complaint, and instead is
12 requesting to use discovery as a "fishing expedition" to substantiate a claim for relief.
13 *See Webb v. Trader Joe's Co.,* 999 F.3d 1196, 1204 (9th Cir. 2021) (finding that the court
14 cannot "condone the use of discovery to engage in 'fishing expedition[s]' " where [ . . .] it
15 is obvious that [the plaintiff] has no basis other than gross speculation to claim that [the
16 defendant] is misrepresenting the[ir] data"). The Court did not ask Plaintiff to provide
17 the complex thought process of a consumer, but to provide facts to support her claim that
18 a reasonable consumer would be misled by Defendants' Efficacy Representations.
19 Plaintiff has failed to do so and has therefore failed to sufficiently to state a claim for
20 which relief could be provided.
21       The Court **GRANTS** Defendants' Motion and **DISMISSES WITH PREJUDICE**
22 Plaintiff's claims regarding Defendants' Efficacy Representations for failure to satisfy the
23 reasonable consumer test.
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

### B. The Skin Safety Representations

Plaintiff does not add new allegations regarding Defendants' Skin Safety Representations in her Second Amended Complaint; thus, the Court **REAFFIRMS** its previous ruling and **GRANTS** Defendants' Motion to Dismiss. (*See generally* SAC; Order at 19–21.)

In sum, Plaintiff again asserts in the SAC that because Wet Ones contain skin allergens, the representation that the product is hypoallergenic is false. (*See* Opp'n 14–16.) Plaintiff's argument is conclusory, and Plaintiff fails to allege facts which support that a reasonable consumer, after reading that the product is "hypoallergenic," would assume that Wet Ones has no potential allergens. *See Rugg v. Johnson & Johnson*, No. 17-CV-05010, 2018 WL 3023493, at *3 (N.D. Cal. June 18, 2018) (finding it "completely implausible" that a reasonable consumer would take "hypoallergenic" on a product's label to mean that the product does not contain "any ingredients, in any concentration, which could 'sensitize' the skin, cause cancer, or have any other negative effect, regardless of whether such effect constitutes an allergic reaction"). Plaintiff's allegations in the SAC fail to focus on how a reasonable consumer would interpret the "hypoallergenic" labeling as it relates to the effect of the product rather than the chemical composition of the product, i.e., whether Wet Ones are more or less likely to cause an allergic reaction, regardless of the actual composition of ingredients.[5]  Based on several definitions of Hypoallergenic, in order to find that Defendants deceptively used the term, Plaintiff must allege she suffered an allergic reaction after using the product or that Wet Ones has a higher likelihood of causing a reaction as compared to similar products on the market. Plaintiff does not allege either. Plaintiff as therefore failed to sufficiently allege

---

[5] "Hypoallergenic" means "having little likelihood of causing an allergic response," (https://www.merriam-webster.com/dictionary/hypoallergenic), or "below average" or "slightly" allergenic, meaning that something (usually cosmetics, pets, textiles, food, etc.) causes fewer allergic reactions, (https://en.wikipedia.org/wiki/Hypoallergenic). Hypoallergenic cosmetics are products that manufacturers claim produce fewer allergic reactions than other cosmetic products. (https://www.fda.gov/cosmetics/cosmetics-labeling-claims/hypoallergenic-cosmetics).

that Defendants' use of the term "hypoallergenic" is false or misleading to the reasonable consumer. Therefore, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiff's claims related to Defendants' Skin Safety Representation for failure to satisfy the reasonable consumer test.

## II. Breach of Express Warranty

"To state a claim for breach of express warranty under California law, a plaintiff must allege: '(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.'" *Portelli v. WWS Acquisition, LLC*, No. 17-CV-2367 DMS (BLM), 2018 WL 9539773, at *5 (S.D. Cal. July 6, 2018). Here, Plaintiff's claim fails as to the Efficacy Representations because Defendants never promised that the hand wipes would kill 99.99 percent of *all* germs, as Plaintiff suggests, or even those specifically identified in the Second Amended Complaint. Thus, no express warranty was breached. Plaintiff's claims regarding the Skin Safety Representations also fail. The Defendants' "hypoallergenic" representation is not false or misleading; thus, no express warranty was breached. *See Myers-Taylor v. Ornua Foods N. Am., Inc.*, No. 3:18-CV-01538-H-MDD, 2019 WL 424703, at *6 (S.D. Cal. Feb. 4, 2019) (finding that the defendants did not breach an express warranty because it did not promise what the plaintiffs alleged). The Court **GRANTS** Defendants' Motion and **DISMISSES WITH PREJUDICE** Plaintiff's breach of express warranty claim.

## III. Quasi-Contract

Plaintiff's claim for quasi-contract also fails as to both the Efficacy and Skin Safety Representations. A quasi-contract claim typically involves a plaintiff seeking the return of a benefit that a defendant unjustly gained through "mistake, fraud, coercion, or request." *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Here, no mistake, fraud, coercion, or request has been shown as to either Defendants' Efficacy Representations or their Skin Safety Representations. The Court thus **GRANTS**

///

Defendants' Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiff's quasi contract claim.

## CONCLUSION

Because Plaintiff's claims under the UCL, FAL, and CLRA do not pass the reasonable consumer test and this is Plaintiff's third iteration of her complaint, the Court **GRANTS** Defendants' Motion and **DISMISSES WITH PREJUDICE** Plaintiff's first through third causes of action. *See DeSoto*, 957 F.2d at 658 (where amendment would be futile, dismissal may be ordered with prejudice). Further, in this third iteration of her complaint, Plaintiff has not adequately alleged that Defendants breached an express warranty or committed a fraudulent act to establish a quasi-contract. The Court therefore **GRANTS** Defendant's Motion and **DISMISSES WITH PREJUDICE** the remaining state law claims.

**IT IS SO ORDERED.**

Dated: September 6, 2022

Honorable Todd W. Robinson
United States District Judge